759 F.2d 287
 Gaylon H. McGOWAN, Administrator ad Prosequendum of the
Estate of McGowan, Valerie Joyce, Deceased, General
Administrator of the Estate of McGowan, Valerie Joyce,
Deceased, and Gaylon H. McGowan and Gloria McGowan,
Individually, Appellants,
v.
UNIVERSITY OF SCRANTON, a corporation of the Commonwealth of
Pennsylvania; and Gloria Gavin, R.N., and Tampax,
Inc., a corporation of the State of
Delaware, Appellees.
 No. 84-5091.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 13, 1984.
Decided April 12, 1985.
Rehearing Denied May 15, 1985.
 
 Benjamin N. Cittadino (argued), Pellettieri, Rabstein & Altman, Trenton, N.J., Isabelle Frank, Betsy Sweetser, Trenton, N.J., on the Brief, for appellants.
 Gordon B. Simmons (argued), Cody H. Brooks, Henkelman, Kreder, O'Connell & Brooks, Scranton, Pa., for appellee University of Scranton.
 Richard G. Fine, Bialkowski, Fine & Bialkowski, Scranton, Pa., for appellee Gavin.
 Roger E. Podesta, Kenneth E. Wile (argued), Marc M. Arkin, Debevoise & Plimpton, New York City, Jeffrey B. Rettig, Thomas & Thomas, Harrisburg, Pa., for appellee Tampax, Inc.
 Before SEITZ and BECKER, Circuit Judges, and TEITELBAUM, District judge.*
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This appeal in a diversity case, 28 U.S.C. Sec. 1332, presents the question whether the running of the statute of limitations applicable to actions brought under the Pennsylvania wrongful death and survival statutes enacted in 1978[1] may be tolled when a plaintiff is unable, despite the exercise of due diligence, to determine the cause of the decedent's death. The Pennsylvania Supreme Court has not yet addressed the applicability of this principle, the so-called "discovery rule," in such circumstances. We must therefore predict how that court would resolve the question. See McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 661-62 (3d Cir.1980).
 
 
 2
 The pertinent statute, 42 Pa.Cons.Stat.Ann. Sec. 5524(2) (Purdon 1981), provides that wrongful death and survival actions must be commenced within two years following the accrual of the cause of action. See also 42 Pa.Cons.Stat.Ann. Sec. 5502(a) (Purdon 1981) (periods of limitations for civil actions generally are measured from time of accrual of cause of action).[2] In this case, the plaintiffs, Gaylon and Gloria McGowan, filed an amended complaint, naming Tampax, Inc. ("Tampax"), as a defendant, more than two years after the death of the plaintiffs' daughter, the event that led to the suit. Notwithstanding this fact, plaintiffs contend that the amended complaint is timely. They assert that the periods of limitations in wrongful death and survival actions are subject to the discovery rule, which in Pennsylvania suspends the running of a statute of limitations until the plaintiff knows, or in the exercise of reasonable diligence, should know: (1) that he or she has been injured; and (2) that the injury has been caused by another party's conduct. Cathcart v. Keene Industrial Insulation, 324 Pa.Super. 123, 471 A.2d 493, 500 (1984); see also Pocono International Raceway, Inc. v. Pocono Produce, Inc., 503 Pa. 80, 85, 468 A.2d 468, 471 (1983). Plaintiffs argue that they did not know and reasonably could not have known of the possible connection between Tampax's conduct and their daughter's death until less than two years before they named Tampax in the suit.
 
 
 3
 The district court granted summary judgment in favor of Tampax, relying on Anthony v. Koppers Co., Inc., 496 Pa. 119, 436 A.2d 181 (1981) (plurality of three Justices, with two Justices concurring in the result), rev'g 284 Pa.Super. 81, 425 A.2d 428 (1980). In Anthony, the Supreme Court of Pennsylvania held that the discovery rule does not apply to wrongful death and survival actions governed by the predecessor provisions of the current statute of limitations, Pa.Stat.Ann. tit. 12, Secs. 34 and 1603 (repealed 1978). The district court extended the holding in Anthony to encompass actions brought under Sec. 5524(2), having concluded that nothing in the language or legislative history of Sec. 5524(2) would suggest a different result.
 
 
 4
 We disagree. As will appear more fully from the discussion infra, this case largely turns on the differences between Sec. 5524(2) and the provisions at issue in Anthony. See infra, at 293-294. (quoting texts of statutory provisions). The critical difference is that the current formulation measures the limitation period from the "accrual" of the "cause of action," whereas the prior provisions used the dates of "death" and "injury." As we read the Anthony opinion, it applies only to the statutes relevant in that case. Accordingly, Anthony does not represent binding precedent in this case. Our examination of the differences in language between the current and repealed statutes of limitations, the legislative history of the current statute, relevant Pennsylvania decisional law, including a recent Superior Court case not available to the district court, and policy considerations persuade us that the Pennsylvania Supreme Court, if faced with this issue, would not extend Anthony to controversies governed by Sec. 5524(2), but rather would apply the discovery rule. Accordingly, we will vacate the grant of summary judgment and remand for further proceedings.
 
 I.
 
 5
 When Valerie Joyce McGowan, a first year student at the University of Scranton, died suddenly and mysteriously on October 13, 1978, the cause of her death was unknown and, in a sense, unknowable, for the disease that was later identified as having caused her death--toxic shock syndrome ("TSS")--had not yet been identified in the medical literature.[3] On July 31, 1979, nine months after Ms. McGowan's death, her parents, Gaylon H. McGowan and Gloria McGowan, filed suit in the district court for the District of New Jersey against the University of Scranton and its infirmary nurse, alleging negligence in the medical care and treatment rendered to Ms. McGowan prior to her death.[4] At that time, the cause of Ms. McGowan's death was still unknown. However, on June 2, 1980, the chief pathologist of the hospital at which Ms. McGowan died wrote to the plaintiffs, telling them that TSS might have been responsible for Ms. McGowan's death. TSS had been identified in 1980 by the Center for Disease Control as possibly being associated with the use of tampons by young women.[5]
 
 
 6
 Pursuant to a consent order entered on July 13, 1981, thirty-three months after the tragedy, plaintiffs filed an amended complaint to state a claim for relief against appellee Tampax, a manufacturer of tampons, in which plaintiffs alleged that Tampax tampons caused Ms. McGowan to contract TSS and die. At the same time, the case was transferred pursuant to 28 U.S.C. Sec. 1404(a) to the district court for the Middle District of Pennsylvania. On December 14, 1983, the district court granted Tampax's motion for summary judgment, holding that the plaintiffs' claim against Tampax was barred under the pertinent statute of limitations, 42 Pa.Cons.Stat.Ann. Sec. 5524(2) (Purdon 1981). Plaintiffs appealed.[6]
 
 II.
 
 7
 A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and substantive law includes statutes of limitations. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 552 (3d Cir.1985). State law includes authoritative pronouncements of the highest court of the state. Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). See Erie, 304 U.S. at 78, 58 S.Ct. at 822; Safeco Insurance Co. of America v. Wetherill, 622 F.2d 685, 687 (3d Cir.1980). Accordingly, in this case we would be bound by an authoritative interpretations of Sec. 5524 by the Pennsylvania Supreme court.
 
 
 8
 Our task becomes more complicated in the absence of a Pennsylvania Supreme Court decision directly on point. In these circumstances, we must predict how that court would decide the issue. Estate Of Bosch, 387 U.S. at 465, 87 S.Ct. at 1782; McKenna, 622 F.2d at 661-62. In attempting to forecast state law, we "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." McKenna, 622 F.2d at 663. See also Safeco, 622 F.2d at 688; Becker v. Interstate Properties, 569 F.2d 1203, 1205 (3d Cir.1977). We bear in mind, too, that we should not accord to any particular "datum" more significance than would the Pennsylvania Supreme Court under similar circumstances. McKenna, 622 F.2d at 662. Decisions of intermediate appellate courts of the state, while not conclusive, are "indicia of how the state's highest court might decide" the issue. Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1167 (3d Cir.1981). In appropriate circumstances, such decisions may constitute "presumptive evidence" of state law. See, e.g., National Surety Corp. v. Midland Bank, 551 F.2d 21, 30 (3d Cir.1977).
 
 
 9
 There is scant state decisional authority relevant to this case. The district court placed controlling weight on the decision of the Pennsylvania Supreme Court in Anthony,[7] in which the court construed different provisions from the one at issue here. At the time it rendered its judgment, however, the district court did not have the benefit of the recent opinion in Pastierik v. Duquesne Light Co., --- Pa.Super. ---, 491 A.2d 841 (1985) (per curiam), in which a panel of the Pennsylvania Superior Court applied the discovery rule to Sec. 5524 in the context of a "creeping disease"[8] case. We consider the impact of Pastierik first, because it is the most recent authority and the only Pennsylvania appellate case directly on point.
 
 
 10
 Pastierik involved wrongful death and survival actions arising out of the death of an individual who had worked around asbestos products. The plaintiff in the case alleged that she, as beneficiary of a wrongful death cause of action and as administratrix of her husband's estate, did not know and reasonably could not have known the cause of her husband's death--allegedly, his exposure to asbestos--until more than two years after the event.
 
 
 11
 In reversing a grant of summary judgment in favor of the defendant, the court noted first that the discovery rule in Pennsylvania has been applied in cases where "the plaintiff is unable, despite the exercise of due diligence, to know of an injury or its cause." Pastierik, --- Pa.Super. at ---, 491 A.2d at 842 (citing Pocono International Raceway, Inc. v. Pocono Produce, Inc., 503 Pa. 80, 468 A.2d 468 (1983)). Next, the court stated that "the equitable foundation of the discovery rule generally is no less sound in the context of wrongful death and survival actions," Pastierik, --- Pa.Super. at ---, 491 A.2d at 842, than it § in the context of personal injury cases. To permit application of the rule in one setting but not the other would be "unjust." Id. at --- - ---, 491 A.2d at 842. The court appears to distinguish the decision of the Pennsylvania Supreme Court in Anthony by noting, without discussion, that Anthony involved different statutes of limitations.
 
 
 12
 As the only state appellate court authority directly on point, Pastierik is clearly entitled to some weight. The paucity of the court's reasoning troubles us, however. Specifically, the court relies in part on the opinion of the Superior Court in Anthony, see 284 Pa.Super. 81, 425 A.2d 428 (1980), which was reversed by the Pennsylvania Supreme Court. While the Pastierik panel was certainly aware of the differences in language between the prior and current statutes, see infra, at 293-294, the opinion does not explain in any detail why the panel concluded that the Supreme Court's holding in Anthony should not be extended to wrongful death and survival actions governed by Sec. 5524(2).
 
 
 13
 Moreover, to the extent that the Pastierik holding rests only on the basis of judicial discretion to implement "equitable" concerns, its authority is highly questionable. The discovery rule "has been read into Pennsylvania's statute of limitations not by judicial compassion but by judicial interpretation of legislative intent." O'Brien v. Eli Lilly & Co., 668 F.2d 704, 712 (3rd Cir.1981) (Sloviter, J., concurring) (citing Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959)). Pennsylvania courts are guided by the maxim that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Statutory Construction Act of 1972, Sec. 1921(b) (codified at 1 Pa.Cons.Stat.Ann. Sec. 1921(b) (Purdon Supp.1984)). In sum, while we acknowledge Pastierik as the only state appellate authority directly on point, we find it necessary to examine more "data" in order to predict how the Pennsylvania Supreme Court would decide the issue. We therefore turn next to consider Anthony and its progeny.
 
 III.
 
 14
 As we have noted, see supra, at 289, the issue in Anthony was whether the discovery rule was available to plaintiffs bringing wrongful death and survival actions governed by the statutes of limitations set forth at Pa.Stat.Ann. tit. 12, Secs. 34 and 1603 (repealed 1978), the predecessor provisions of Sec. 5524(2).[9] Anthony involved claims by the widows and administratrices of a number of employees who allegedly contracted lung cancer as the result of their exposure to emissions from coke ovens. The plaintiffs alleged that the possible causal nexus between the decedents' lung cancer and the exposure was not discovered and reasonably could not have been discovered until after their deaths. The Supreme Court reversed the Superior Court, which had applied the discovery rule to both types of actions and denied the defendants' motions for summary judgment.
 
 
 15
 The precedential significance of Anthony has been at the center of the controversy between the parties here. Tampax urges that we consider ourselves bound by the decision, for they view Anthony as a definitive rejection of the discovery rule in all cases involving deceased victims of allegedly tortious conduct. Anthony is equally applicable to actions governed by Sec. 5524, according to Tampax, because, except for the duration of the limitation period, that provision is a simple reenactment of the statutes at issue in Anthony. The plaintiffs, on the other hand, contend that the decision has no precedential effect because the principal opinion was joined by only a plurality of the court, and, at all events, because of the change in the statute of limitations. We take up the "plurality" argument first.A.
 
 
 16
 It is true, as plaintiffs argue, that "[u]nder Pennsylvania law, an opinion joined by fewer than a majority of the justices of the Commonwealth's Supreme Court is not binding or controlling precedent." Vargus v. Pitman Manufacturing Co., 675 F.2d 73, 74 (3d Cir.1982). See Mt. Lebanon v. County Board of Elections, 470 Pa. 317, 368 A.2d 648 (1977). This court will ordinarily treat the views expressed in such an opinion only "as an expression of the views of a minority of the court." Vargus, 675 F.2d at 74 (quoting Greiner v. Volkswagenwerk Aktiengeselleschaft, 540 F.2d 85, 91 (3d Cir.1976)). As it was joined by only three justices, the plurality opinion in the Anthony case falls within this rule.[10]
 
 
 17
 In considering the precedential force of Anthony, however, we do not write on a clean slate. The intermediate appellate courts of the Commonwealth have recognized the decision in Anthony as an authoritative holding to the effect that the now repealed statutes of limitations, Pa.Stat.Ann. tit. 12, Secs. 34 and 1603 (repealed 1978), do not permit the application of a discovery rule in wrongful death and survival actions. See Gravinese v. Johns-Manville Corp., 324 Pa.Super. 432, 471 A.2d 1233, 1236-37 (1984); McNair v. Weikers, 300 Pa.Super. 379, 387 n. 5, 446 A.2d 905, 909 n. 5 (1982). This court recently has taken the same view. Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 553 n. 3 (3d Cir.1985). The relevant jurisprudence under the now repealed statutes would appear, therefore, to be settled.
 
 
 18
 Even though Anthony has been acknowledged as an authoritative interpretation of Secs. 34 and 1603, there remains a substantial question as to whether the Pennsylvania Supreme Court would extend the reasoning and result in Anthony to encompass actions governed by Sec. 5524(2). The language of the statutes construed in Anthony differs from the language of Sec. 5524(2), and the opinion makes only the barest reference, in a citation, to the current provision. Anthony, 496 Pa. at 122 nn. 4 & 5, 436 A.2d at 183 nn. 4 & 5. Upon first reading, therefore, the opinion appears to control only the reading of the repealed provisions. A closer analysis bears out this initial impression.
 
 B.
 
 19
 The Anthony opinion discussed separately the wrongful death and survival claims raised in that case. Taking up the wrongful death action first, the court noted that the prior statute of limitations applicable to wrongful death actions provided that "[t]he declaration shall state who are the parties entitled in such action; the action shall be brought within one year of the death, and not thereafter." Pa.Stat.Ann. tit. 12, Sec. 1603 (repealed 1978). See Anthony, 496 Pa. at 122-23, 436 A.2d at 183. For purposes of comparison, we set forth, in relevant part, the provisions at issue in this case:
 
 
 20
 Sec. 5502. Method of computing periods of limitation generally
 
 
 21
 (a) General Rule.--The time within which a matter must be commenced under this chapter shall be computed, except as otherwise provided by subsection (b) or by any other provision of this chapter, from the time the cause of action accrued, the criminal offense was committed or the right of appeal arose.
 
 
 22
 42 Pa.Cons.Stat.Ann. Sec. 5502 (Purdon 1981).
 
 
 23
 Sec. 5524. Two year limitationThe following actions and proceedings must be commenced within two years:
 
 
 24
 ....
 
 
 25
 (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.
 
 
 26
 42 Pa.Cons.Stat.Ann. Sec. 5524 (Purdon 1981). The obvious difference between the repealed and current provisions, in addition to the different lengths for the periods, is that Secs. 5502(a) and 5524(2) do not require in terms that the limitation period must run from the date of death. Although the Anthony court did not discuss the significance of these differences in language, subsequent courts have taken note of them, raising the possibility that the changes reflected in Sec. 5524(2) might well affect the availability of a discovery rule. See Gravinese, 471 A.2d at 1237 n. 5 (language codified at 42 Pa.Cons.Stat.Ann. Sec. 5524(2) does not contain the same language as the repealed statute of limitations governing wrongful death actions, and does not contain a specific requirement that the statute begin to run from date of death); Ciccarelli, 757 F.2d at 553 n. 4 (whether the language of Sec. 5524 permits application of the discovery rule is an open question).
 
 
 27
 Indeed, a careful examination of the Anthony opinion itself suggests that the differences in language are significant. In the course of discussing repealed Sec. 1603, the Anthony plurality stated:
 
 
 28
 Statutory references to the occurrence of an "injury" or the accrual of a "cause of action" are subject to judicial interpretation as to the degree of knowledge a plaintiff must possess before the statute will start to run. In contrast, the requirement that a wrongful death action be brought within two years after a definitely established event,--"death"--leaves no room for construction.
 
 
 29
 496 Pa. at 124, 436 A.2d at 184. This discussion suggests that the court considered itself bound in construing Sec. 1603 by the precise statutory language it was required to interpret. In declining to engraft a discovery rule onto Sec. 1603, the Pennsylvania Supreme Court joined a number of courts that have refused to read a discovery rule into unambiguous statutes measuring periods of limitation from the time of death. See, e.g., Cadieux v. International Telephone & Telegraph Corp., 593 F.2d 142, 144 (1st Cir.1979) (Rhode Island law); Presslaff v. Robins, 168 N.J.Super. 543, 403 A.2d 939 (App.Div.1979). Cf. DeCosse v. Armstrong Cork Co., 319 N.W.2d 45, 48-49 (Minn.1982) (discovery rule not applicable where wrongful death statute of limitation measured period from "act or omission"). See generally Note, 55 Temple L.Q. 625, 633-35 & n. 57 (1982). This reasoning and holding also flow from an application of the Pennsylvania canon of statutory construction that courts of the Commonwealth must interpret unambiguous statutes according to their terms. See 1 Pa.Cons.Stat.Ann. Sec. 1921(b) (Purdon Supp.1984), quoted in Anthony, 496 Pa. at 123, 436 A.2d at 183. Absent from the opinion, however, is any suggestion that broader considerations of policy would compel or even favor the same result in the absence of unambiguous statutory language.
 
 
 30
 At the same time, the quoted portion of Anthony also indicates that when statutes of limitation include ambiguous terms courts are permitted to exercise broader latitude in construing them. The Anthony plurality further acknowledged that, unlike those that speak in terms of definite events such as "death," statutes that are cast in terms of "accrual" of a "cause of action," such as Sec. 5524, are not free from ambiguity. Anthony, 496 Pa. at 124, 436 A.2d at 184; See also Irrera v. SEPTA, 231 Pa.Super. 508, 331 A.2d 705 (1974) (applying discovery rule where statute provided "from the date ... the cause of action accrued"); Raymond v. Eli Lilly, 117 N.H. 164, 167, 371 A.2d 170, 172 (1977) (noting that "accrual" type statutes may begin to run at any one of several points in time). The opinion thus implies rather clearly that there would be no legislative barrier to judicial incorporation of the discovery rule interpretation into an "accrual" wrongful death statute of limitations. When construing statutes of this type, the courts presumably would apply the discovery rule in cases where its purpose, the protection of "blamelessly ignorant" plaintiffs, Frederick v. Calbio Pharmaceuticals, 89 Cal.App.3d 49, 152 Cal.Rptr. 292 (1979), would be served. Cf. Pocono International Raceway, 503 Pa. at 85, 468 A.2d at 471 (discovery rule is exception to the general rule that lack of knowledge or mistake do not toll running of the statute of limitations arising from the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause).
 
 
 31
 In view of the abbreviated discussion in Anthony and the fact that only three Justices joined in the opinion, any conclusions we draw from its analysis are necessarily tentative. Nevertheless, the Anthony opinion provides at least some evidence that the plurality would have reached a different result had the court been asked to determine the availability of the discovery rule in wrongful death actions governed by an accrual statute of limitations, such as Sec. 5524(2).
 
 C.
 
 32
 The portion of the Anthony opinion dealing with the survival actions, governed by Pa.Stat.Ann. tit. 12, Sec. 34 (repealed 1978), is more difficult to analyze. That statute provided as follows:
 
 
 33
 Every suit hereafter brought to recover damages for injury wrongfully done to the person, in cases where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the injury does result in death the limitation of action shall remain as now established by law. [Pa.Stat.Ann. tit. 12, Sec. 34 (repealed 1978) ].
 
 
 34
 Anthony, 496 Pa. at 125, 436 A.2d at 184. The court's entire rationale and holding on this issue are set forth in a single paragraph:
 
 
 35
 As distinguished from the wrongful death statutes, the survival statutes do not create a new cause of action; they simply permit a personal representative to enforce a cause of action which had already accrued to the deceased before his death. Here, by arguing that their decedents were not "injured" until some time after their deaths, appellees concede that no valid cause of action existed at the time of death which could be preserved under the survival statutes. The survival claims were clearly barred.
 
 
 36
 Anthony, 496 Pa. at 125, 436 A.2d at 185 (emphasis in original; citation and footnote omitted).
 
 
 37
 The implications of this language are hardly self-evident. It is not clear, for example, whether the decision that the survival claims "were clearly barred" rested on a definition of "accrual," on an interpretation of the meaning of "time when the injury was done" in Sec. 34, or on some other ground. This court in Ciccarelli appears to have concluded that the decision turns on the factors necessary for a cause of action to accrue:
 
 
 38
 The [Anthony ] court reasoned that since for statute of limitations purposes, the injury does not occur until the injured party has learned of the cause of the injury and since the cause was not discovered until after the decedents' death, the 'decedents were not 'injured' until some time after their deaths....' 496 Pa. at 125, 436 A.2d at 185 (emphasis in original). Thus, "no valid cause of action existed at the time of death which could be preserved under the survival statutes." Id.
 
 
 39
 Ciccarelli, 757 F.2d at 553-54. Thus, in cases involving an unknown cause of death, the cause of action may be extinguished even before it can accrue. Id.
 
 
 40
 We concede that this interpretation is consistent with the language in the opinion. This reasoning, however, leads to "perverse results." Id. Extending the logic leads to the conclusion that under Anthony, a tortfeasor would be relieved of the obligation to compensate the estate of his victim, regardless of when suit is instituted, if the victim dies without discovering the cause of his death. The defendants in Redeker v. Johns-Manville Products Corp., 571 F.Supp. 1160 (W.D.Pa.1983), urged this interpretation of Anthony in support of a motion to dismiss survival actions, governed by Sec. 5524(2), brought within two years of death.
 
 
 41
 In a thoughtful opinion, Judge Diamond rejected the argument. He noted that, in addition to effecting a harsh and inequitable result, such a holding would effect a substantial change in Pennsylvania law. At the time Anthony was decided, settled Pennsylvania law held that a cause of action accrued when several conditions obtained: (1) a duty owed; (2) the breach of that duty; (3) an injury proximately caused by the breach; and (4) damages. Redeker, 571 F.Supp. at 1166 (quoting Powell v. Johns-Manville Corp. (No. 1), 130 Pitt.Leg.J. 429, 431-32 (Ct.Common Pleas Allegheny County 1982) (extensive citation of authority prior to Anthony )); Prosser & Keeton on Torts Sec. 30, at 164-65 (W.P. Keeton 5th ed. 1984). Judge Diamond declined to import a "knowledge" requirement into the settled doctrine regarding accrual of causes of action on the basis of the cloudy reasoning of the plurality opinion in Anthony. Accord Del Percio v. Johns-Manville Corp., No. 1322 (-) [Asbestos Case], (Ct. Common Pleas Philadelphia County, Jan. 29, 1982) (Anthony does not bar wrongful death and survival actions commenced within two years after death).
 
 
 42
 The Pennsylvania Superior Court also appears to view Anthony as not changing the jurisprudence of "accrual" of actions under statutes under Pennsylvania law. In Gravinese, the court stated that "[t]he survival statute [at issue in Anthony ] did not create a new cause of action; it simply permitted a cause of action accruing prior to death to be enforced after death by the decedent's personal representative." 471 A.2d at 1237 (emphasis added). Thus the court appears to have assumed that a cause of action may accrue even though the cause of the injury is not discoverable until some time after the victim's death. We also are inclined to adopt this narrower reading. But see Powell v. Johns-Manville Corp. (No. 2), 130 Pitt.Leg.J. 435, 447 (Ct. Common Pleas Allegheny County 1982) (Anthony rationale based on definition of accrual, not on statute of limitations).
 
 
 43
 The other possible explanation for the Anthony court's disposition of the Sec. 34 survival claim, therefore, is that the opinion addressed not the question of when a cause of action accrued, but only the question of when the statute had run. Cf. McKenna, 622 F.2d at 666 (Ohio law) (noting distinction in Ohio cases between "question of when a cause of action arises" and "whether the ... statute of limitations is, for some reason, tolled"). Under this reading of Anthony, Sec. 34 will not run against an injured individual reasonably unable through the exercise of diligence to discover his injury or the cause of it, see, e.g., Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959), but begins to run, regardless of the decedent's knowledge, at the time of death. "The period of limitations applicable to a survival action sounding in tort, therefore, cannot be extended more than two years beyond the date of death." Gravinese, 471 A.2d at 1237 (construing Sec. 34); Accord Redeker, 571 F.Supp. at 1168 (construing Sec. 5524(2)). Cf. Anthony, 496 Pa. at 122, 436 A.2d at 183 ("Appellants, of course, argue that the discovery rule is inapplicable and that the statutory periods began to run, at the latest, on the dates of the decedents' deaths. We agree.").
 
 
 44
 This possible rationale, though consistent with the holding in Ciccarelli, Gravinese, and other cases construing Anthony, is not entirely satisfactory. Anthony itself distinguished between statutes that are phrased in terms of a definite event, such as "death," and those that are susceptible to judicial interpretation "as to the degree of knowledge that the plaintiff must possess before the statute will start to run." 496 Pa. at 124, 436 A.2d at 184. In the latter category, the court placed statutes that refer to the occurrence of an "injury" or the accrual of a "cause of action." Id.[11] Section 34, of course, refers to the time when the injury was done. Yet, the Anthony plurality acknowledges the application of the discovery rule in certain classes of personal injury cases governed by Sec. 34, without in any way calling into question their soundness. See 496 Pa. at 124 n. 8, 436 A.2d at 184 n. 8. In contrast, the holding in the case denies to the personal representatives of "blamelessly ignorant" decedents those same protections of the discovery rule extended to injured plaintiffs in personal injury cases.
 
 
 45
 If there are policy considerations that justify such a distinction between personal injury and survival actions governed by the same statute of limitations, they are left unstated by the Anthony plurality. Indeed, it would appear that the compensatory goals of the tort system--the compensation of innocent victims and the deterrence of tortious conduct--are better served by applying the discovery rule in both contexts. The Pennsylvania Supreme Court has noted that "[t]he purpose of the survival statute is remedial and the statute is broadly drawn." Moyer v. Phillips, 462 Pa. 395, 401, 341 A.2d 441, 444 (1975) (striking down portion of Pa.Stat.Ann. tit. 20, Sec. 3371 (predecessor of 42 Pa.Cons.Stat.Ann. Sec. 8302), providing that causes of action for libel and slander are exceptions to general rule that all causes of action, real or personal, survive the death of the plaintiff or the defendant). It is true that application of the discovery rule in survival actions, as well as in wrongful death actions, "raises the spectre of suit on behalf of persons long dead." Anthony, 284 Pa.Super. at 105, 425 A.2d at 440, rev'd on other grounds, 496 Pa. 119, 436 A.2d 181. But application of the discovery rule always increases the risk that defendants may be subjected to stale claims, yet this consideration has not deterred the Pennsylvania courts from applying the rule in other contexts. See generally id. 284 Pa.Super. at 86-94, 425 A.2d at 431-35 (discussing history of discovery rule in Pennsylvania).
 
 D.
 
 46
 Having analyzed Anthony at some length, we are not entirely certain what lessons we can draw from it. On the one hand, the holdings of Anthony are clear: the discovery rule does not apply to wrongful death or survival actions governed by Secs. 34 and 1603. On the other hand, the rationale for these holdings, hence the implications of Anthony for this case, are less clear. In reaching its result on the wrongful death claim, the Anthony plurality relied on the specific language of Sec. 1603, which differs from that of Secs. 5502(a) and 5524(2). See infra part IV. With regard to the survival actions, it is clear only that the court reached the same result--the discovery rule does not apply. The opinion offers no explanation for this holding that is consistent with both the application of the discovery rule in injury cases governed by Sec. 34, and with settled Pennsylvania law regarding accrual of actions.[12] And the opinion eschews any substantive reference, even in dictum, to Secs. 5502 and 5524. In these circumstances, we cannot agree that the decision in Anthony, without more, controls this case.
 
 
 47
 Tampax rejoins, however, that Anthony must control because the General Assembly, in replacing Secs. 34 and 1603, with Sec. 5524, intended to work no significant change in the law. The district court agreed. In order to assess this argument, we turn our attention to the legislative arena and review the legislative history and circumstances surrounding the replacement of the provisions construed in Anthony by 42 Pa.Cons.Stat.Ann. Secs. 5502 and 5524.
 
 IV.
 
 48
 Tampax makes essentially two points regarding the differences between Secs. 34 and 1603, on the one hand, and Secs. 5502(a) and 5524(2), on the other: first, that the current statutory provisions represent a simple reenactment of the prior provisions; and, second, that if the Pennsylvania General Assembly had intended to permit application of the discovery rule to wrongful death and survival actions, it would have expressly so provided. The district court evidently accepted these arguments:
 
 
 49
 This court agrees with defendant Tampax that there is no meaningful difference (other than the increased period of limitations for wrongful death actions) between the previous statutes of limitations 12 P.S. [Sec.] 34, 12 P.S. [Sec.] 1603 and the present one 42 Pa.C.S.A. [Sec.] 5524(2).
 
 
 50
 ....
 
 
 51
 There is no reference [in the legislative history of section 5524] to the "discovery rule" or to any desire on the part of the legislature to have it apply to such actions.... Finally, defendant argues and this court agrees that if the Pennsylvania legislature wanted to extend the "discovery rule" to claims brought under the wrongful death and survivors' statutes then it would have expressly done so.
 
 
 52
 Appendix at 68-69 (opinion of the district court).
 
 
 53
 We reject both arguments and, for the reasons that follow, conclude that the General Assembly did effect a substantial change in the law by enacting Secs. 5502 and 5524. Based upon our reading of the new provisions, we predict that the Pennsylvania Supreme Court will apply the discovery rule to wrongful death and survival actions governed by these provisions.
 
 A.
 
 54
 Section 5524 of Title 42 of the Pennsylvania Consolidated Statutes was enacted as part of the Pennsylvania Judicial Code. The Judicial Code Act of 1976, July 9, P.L. 586, No. 142 (effective June 27, 1978).[13] The Judicial Code was drafted over a seven-year period by a special committee of the Pennsylvania Bar association, in cooperation with a similar committee of the Pennsylvania Conference of State Trial Judges. See Pennsylvania Bar Association, Judicial Code Explanation, "Legislative Bulletin," (Special Issue May 17, 1978--No. 2), reprinted in 42 Pa.Cons.Stat.Ann. Secs. 101-700, at xi-xxxii (Purdon 1981) (hereinafter "Explanation"). Tampax contends that the Judicial Code was only a technical compilation and codification of Pennsylvania law. The Explanation does not support this contention.[14]
 
 
 55
 At the outset of the codification project, the drafting committees adopted a number of criteria to guide their task. These criteria are reproduced in the Appendix to this opinion, along with a representative sampling of the seventy-odd changes in the law resulting from enactment of the Judicial Code. This legislative history persuades us that the drafters did not consider themselves subject to a limited charter encompassing only codification and clarification. Those areas of the law that were to be left untouched, for example, the rules of evidence (see Appendix, Criterion 15), were clearly identified. The drafting committee was not so limited as to the revisions of statute of limitations or numerous other areas, as the changes in the law set forth in the Appendix illustrate. We shall not extend this opinion by extensive citation to the changes. We simply observe that a review of them makes it clear beyond cavil that the Code was no mere codification but rather worked extensive changes in the law.
 
 
 56
 Moreover, the scope of the mandate under which the drafters labored is only of secondary importance to the resolution of this case. The Explanation itself eliminates any doubt as to whether the statutes of limitations were to be affected by the Judicial Code, where it states: "During the legislative consideration of the Code the General Assembly also determined to utilize the Code bills as a vehicle to rationalize and simplify the statutes of limitation." Id. at xv. This statement alone suffices to refute conclusively Tampax's "compilation and codification" argument.[15]
 
 B.
 
 57
 Even though the Explanation recognizes the importance of substantive changes wrought by the Judicial Code, see Explanation at xxxii ("[t]he process of codification and revision is necessarily the occasion for changes in language and intent"), Tampax argues, and the district court agreed, that the changes embodied in Sec. 5524 should be construed narrowly. In this regard, the district court placed heavy emphasis on the description of Sec. 5524(2) in the Explanation:
 
 
 58
 Sec. 5524. The period of limitations in wrongful death actions is increased from one to two years to conform to the general two-year statute on personal injuries.
 
 
 59
 Explanation at xvi. Under the district court's view, Sec. 5524(2) is to be interpreted as requiring that "a wrongful death action shall be brought within two years after the death, and not thereafter." Cf. Pa.Stat.Ann. tit. 12, Sec. 1603.
 
 
 60
 We disagree. In our view, the language of Sec. 5524, and its companion provision, 42 Pa.Cons.Stat.Ann. Sec. 5502(a), differ in several important respects from that of the repealed statutes. For example, the previous statute applicable to wrongful death actions was "quite specific," Anthony, 496 Pa. at 123, 436 A.2d at 183, in a way that Sec. 5524 is not. In contrast, accrual-type statutes of limitation, of which Sec. 5524 is an example, may begin to run at any one of a number of points in time. Raymond v. Eli Lilly & Co., 117 N.H. 164, 170, 371 A.2d 170, 174 (1977). See, e.g., Irrera v. SEPTA, 231 Pa.Super. 508, 331 A.2d 705 (1974) (discovery rule applied to personal injury action where statute measured limitations period "from the date ... the cause of action accrued").
 
 
 61
 Another difference between the current and prior statute of limitation is the inclusion in a single provision--Sec. 5524(2)--of wrongful death, survival, and personal injury actions. The Explanation indicates that the General Assembly's reason for modifying the wrongful death statute was a desire to make it "conform to the general two-year statute on personal injuries." Explanation at xvi. Given this statutory structure, we consider it unlikely that the General Assembly intended different rules to apply to the various actions. Disparate treatment would hardly comport with the stated aims of the General Assembly to "rationalize and simplify" the statutes of limitations. Id. at xv. This reasoning suggests that, if otherwise appropriate, the discovery rule should apply to no lesser extent in wrongful death cases than in injury cases.[16]
 
 
 62
 In Frederick v. Calbio Pharmaceuticals, 89 Cal.App.3d 49, 152 Cal.Rptr. 292 (1979), the court construed an "accrual" type wrongful death statute of limitations that was similar to Sec. 5524. The statute encompassed personal injury, wrongful death, and other types of actions, and the discovery rule had theretofore been applied to other actions within the ambit of the statute. The court held that the discovery rule also applied to wrongful death actions, concluding that in enacting a unified statute of limitations, the legislature had manifested an intent to accord equal treatment to all types of actions encompassed within the statute. 89 Cal.App.3d at 55, 152 Cal.Rptr. at 295 (citing Wohlgemuth v. Meyer, 139 Cal.App.2d 326, 293 P.2d 816 (1956)).[17] Of course, "equal treatment" under Sec. 5524, could be achieved by rejecting the discovery rule as to all types of actions specified therein. We do not believe, however, that the Pennsylvania Supreme Court would interpret Sec. 5524 as precluding application of the rule.
 
 
 63
 In Pocono International Raceway, Inc. v. Pocono Produce, Inc., 503 Pa. 80, 468 A.2d 468 (1983), the court considered the application of the discovery rule in the context of an action for trespass of real property. The record revealed that a truck driven by an employee of the defendant had collided with and caused damage to the inferior structural beams of a tunnel owned by the plaintiff. The collision occurred more than two years before suit was instituted, but less than two years before the damage was discovered. The Supreme Court reversed the Superior Court and affirmed summary judgment in favor of the defendants, holding that the discovery rule did not apply in that case because "as a matter of law, the cause of action (the trespass) was discoverable by the exercise of diligence in the use of means within reach of the [plaintiff] Raceway...." 503 Pa. at 86, 468 A.2d at 471. The plaintiff's failure actually to discover the damage because the tunnel had been sealed by the plaintiff, according to the court, "is not the sort of blameless ignorance which compels the application of the discovery rule...." Id. Thus the court expressly contemplated that, where the policies underlying it would be served, the discovery rule may apply in a case governed by Sec. 5524.
 
 
 64
 At the time the Judicial Code was enacted, moreover, the discovery rule had already become an established part of Pennsylvania decisional law under Sec. 34. Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959). See also Lewey v. H.C. Fricke Coke Co., 166 Pa. 536, 31 A. 261 (1895) (discovery rule applicable to subterranean trespass). See generally Anthony, 284 Pa.Super. at 92-93, 425 A.2d at 434-35, and cases cited therein. We may assume that the General Assembly was aware of these applications of the discovery rule, and we find it significant that the legislature manifested no intent whatsoever to disturb those decisions.[18]
 
 
 65
 On the basis of the foregoing discussion, we conclude that the General Assembly, in enacting the accrual statute of limitations in Sec. 5524, implicitly approved the application of discovery rule principles that had been established by the Pennsylvania courts, and manifested an intent to extend those same principles to wrongful death and survival actions. We concede, as we must, that the General Assembly did not choose to use the words "date of discovery" as such; however, the difference in language between the current and prior provisions is so striking that it seems to us highly unlikely that the General Assembly intended to perpetuate a situation that leaves a wrongdoer in the position of wishing he had killed, rather than merely injured, the plaintiff. See W. Prosser, Law of Torts Sec. 127, at 902 (4th ed. 1971). Our conclusion is not inconsistent with Anthony, for that case was limited to actions governed by the prior statutes, and is consistent with Pastierik, which is directly on point. See supra part III. We hold therefore that the district court erred in giving controlling effect to Anthony and in failing to accord appropriate weight to the differences between Sec. 5524 and its predecessor provisions.
 
 D.
 
 66
 Finally, we must consider whether our conclusion in part C. is undermined by certain limitations provisions under the Pennsylvania No-fault Motor Vehicle Insurance Act, see Pa.Stat. tit. 40, Sec. 1009.106 (Purdon Supp.1984), repealed by 1984 Pa.Laws, No. 11, at 52, to which Tampax directs us. It would appear that the discovery rule is not available with respect to an action for survivor's benefits, i.e., an action for no-fault benefits arising out of a death resulting from the maintenance or use of a motor vehicle, but is made expressly applicable to similar actions where the victim is injured, but not deceased. Pa.Stat.Ann. tit. 40, Sec. 1009.106(c).[19]
 
 
 67
 The analogy to the No-fault Act lends no support to Tampax for several reasons. The No-Fault Act embodies a set of policies that are not wholly applicable to tort actions generally. "The [No-Fault] Act ... drastically changed the circumstances under which a person can sue in tort when injured in an automobile accident." Bond v. Gallen, 503 Pa. 286, 288, 469 A.2d 556, 557 (1983). Illustrative of these changes is the partial abolition of tort liability under the act. See Pa.Stat.Ann., tit. 40, Sec. 1009.301 (Purdon Supp.1984), repealed by 1984 Pa.Laws, No. 11, at 52. We are therefore reluctant to import into the general statute of limitations rules or doctrines that may have been adopted by the General Assembly to address a specific, pressing problem.
 
 
 68
 In any event, the distinction in Sec. 1009.106 between actions for no-fault benefits for injured accident victims and actions by survivors of deceased victims is not inconsistent with the result we reach today. The no-fault act encompasses injuries and deaths arising out of automobile accidents only. A more restrictive approach to the discovery rule may well be appropriate in the accident context. The accident itself will almost always be the "specific event," Cathcart v. Keene Industrial Insulation, 324 Pa.Super. 123, 471 A.2d 493, 501 (1984) (en banc), which places the "burden ... on the injured party ... to determine within the statutory period ... the party or parties whose negligence or breach of duty was responsible...." Id. See also supra at 289. This is especially true when the "injury" is death. Section 1009.106(c)(2) simply places decedents' survivors on notice that a failure to seek no-fault benefits where a death follows closely upon an automobile accident is conclusively presumed not to be "blameless."[20]
 
 
 69
 Perhaps most significant, this distinction demonstrates vividly that the General Assembly, when it wishes to do so, is capable of expressing an intent to injured victims differently from the survivors of decedents. Viewed against the backdrop of the No-fault Act, then barely two years old, the failure of the General Assembly to differentiate among personal injury, wrongful death, and survival actions under Sec. 5524(2), supports the conclusion that no differentiation was intended.
 
 V.
 
 70
 Today we hold, first, that the decision in Anthony is not controlling as to wrongful death and survival actions governed by Sec. 5524, and second, that the running of Sec. 5524 is tolled until such time as the beneficiaries of wrongful death and survival actions actually discover, or should in the exercise of diligence have discovered, the cause of the decedent's death. We thus agree with the holding of the Superior Court in Pastierik, the only state appellate authority directly on point.
 
 
 71
 With regard to wrongful death actions, our conclusion is supported by the opinion in Anthony itself, where the court suggested only that the precise language of the prior statute, not present in Sec. 5524(2), compelled the opposite result. We recognize that this result may increase the burden on defendants; however, this argument has been impliedly rejected by the Pennsylvania courts in the context of creeping disease and other cases, and in light of our analysis supra, we believe the argument would fare no better in the wrongful death context under Sec. 5524.
 
 
 72
 We concede that the survival action presents a much closer question. The differences in statutory language between Sec. 34 and Sec. 5524 are less marked than are the differences between Sec. 1603 and Sec. 5524. But cf. supra note 11. Second, we recognize that wrongful death and survival actions have different historical roots, which may justify some differences between the two types of actions. See supra note 12. Third, the opaque reasoning in Anthony offers little guidance on this score. Ultimately, however, we are persuaded that the legislative aim to "rationalize and simplify the statute of limitations," Explanation, at xv, and the remedial purpose of the survival statute reflect an intent that survival actions be subject to the discovery rule as well. Both types of actions serve essentially the same purpose--redressing the damage done by tortious conduct that has resulted in death. It would be anomalous to apply the discovery rule to one and not to the other.
 
 
 73
 The McGowans' amended complaint, asserting a claim against Tampax, was filed on July 13, 1981. The article that first described TSS was published in November 1978, see supra note 3. There is nothing in the record of this case, however, to suggest that the plaintiffs should have known of the connection between TSS and Ms. McGowan's death before June 2, 1980, less than two years before Tampax was joined as a party, when the Centers for Disease Control linked TSS with the use of Tampons. The date of "discovery" in this case is therefore still open to dispute. In light of our holding in this case, we leave to the district court proceedings on remand resolution of any possible contention that the McGowans should reasonably have discovered the connection between Ms. McGowan's death and her use of tampons before July 13, 1979.
 
 
 74
 Accordingly, we will vacate the award of summary judgment and remand for further proceedings consistent with this opinion.
 
 
 75
 APPENDIX*
 
 Judicial Code Drafting Committee Criteria
 
 76
 1. The Judicial Code should cover in a comprehensive manner the organization, structure and functioning of the Judicial Branch, the powers and duties of officers enforcing order of courts or justices of the peace, and all financial matters relating thereto, [and should specifically repeal all prior statutory provisions on all subjects covered,] but should not affect the existing powers, duties and functions of county row officers.
 
 
 77
 2. The Judicial Code should be drawn so as to provide a flexible framework within which the Judicial Branch may function without the need for frequent legislative adjustment.
 
 
 78
 3. The Judicial Branch should have the power, by general rule, or by order in specific cases, to specify the items which constitute taxable costs and the party who shall bear such costs, but attorneys' fees should be an item of taxable cost only where authorized by statute.
 
 
 79
 4. The Judicial Branch should have the power, under statutory standard, to set the official fees to be charged in connection with judicial proceedings and the enforcement of judicial process and to be received by jurors and witnesses.
 
 
 80
 5. The Judicial Code should omit matters relating to the practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders of courts and justices of the peace, admissions to the bar and the administration of all courts and supervision of all officers of the Judicial Branch, other than criminal provisions relating thereto, [and should specifically repeal all existing statutes on such subjects effective after four years, or upon the absolute suspension of a statutory provision by general rule, whichever is earlier.
 
 
 81
 6. The Judicial Code should be based on an express rule of statutory construction to the effect that where in the absence of such rule the absolute repeal of any statute by the Code would operate to abridge, enlarge or modify the substantive rights of any litigant and the Code fails to carry forward any express provision on the same subject, the substantive common law on such subject in effect prior to the enactment of such statute shall not be revived by such absolute repeal, but the substantive rule of law embodied in such statute shall be deemed to be received into the common law of this Commonwealth.
 
 
 82
 7. The Judicial Code should vest all powers in the Supreme Court, with provision for delegation by Supreme Court action to the Judicial Council of Pennsylvania, the Administrative Office of Pennsylvania Courts, the various procedural rules committees, or other entities within the Judicial Branch, as the Court may direct.
 
 
 83
 8. Special consideration should be given during the drafting process to the status of the Judicial Conference of Pennsylvania, the Pennsylvania Conference of State Trial Judges, the Pennsylvania Bar Association and other such entities to determine whether and to what extent, if any, they should be included in the structure of the Judicial Branch as set forth in the Judicial Code.
 
 
 84
 9. The Judicial Code should contain provisions vesting budget and administrative functions in the Court Administrator of Pennsylvania which are comparable to the functions exercised by the head of an executive department, with the Judicial Council performing a review and approval function paralleling that of the Governor in the Executive Branch, and the Judicial Department appropriation should be consolidated into a single line item.
 
 
 85
 10. The Judicial Code should contain a provision vesting the responsibility for post-audit of Unified Judicial System financial transactions in the Department of the Auditor General.
 
 
 86
 11. The Judicial Code should eliminate all existing statutory provisions which purport technically to subdivide the jurisdiction of a single court of common pleas among its several divisions.
 
 
 87
 12. The office in which filings are made in the court of common pleas should be designated in the Judicial Code as the "Office of the Clerk of the Court of Common Pleas," but the functions of that office should be exercised by the prothonotary, clerk of the courts, clerk of the orphans' court division, and register of wills, as now provided by law.
 
 
 88
 13. Matters relating to the register of wills and matters relating to the orphans' court division not incidentally covered by general provisions of the Code should be allocated to the proposed Title 20 of the Consolidated Pennsylvania Statutes prepared by the Decedents' Estates Laws Advisory Committee of the Joint State Government Commission.
 
 
 89
 14. Wherever the existing law on a subject is represented by a statute based on a uniform statute which has been withdrawn and superseded by a later and improved uniform statute on the same subject, the substance of the later and improved version should be incorporated into the Code [not followed in all cases].
 
 
 90
 15. No attempt should be made to revise the rules of evidence, other than incidental codification of the law applicable to documentary evidence, but the Supreme Court or its delegate should be authorized to adopt rules of evidence for Pennsylvania comparable to any rules of evidence adopted for use in the courts of the United States.
 
 
 91
 Sample of Changes in Law Effected by the Code
 
 
 92
 Sec. 324. Terms of court are abolished unless a court chooses to retain them.
 
 
 93
 Sec. 325(e). The powers of a president judge are clarified.
 
 
 94
 Sec. 503(b). The procedures for legislative veto of certain court rules are revised and the review period extended to 120 calendar days plus adjournments of ten days or more.
 
 
 95
 Sec. 708. A powerful new provision is added eliminating the present procedural trap facing a litigant objecting to governmental action in the courts of common pleas. For example, it was frequently not clear under prior law whether the proper mode of relief against an officer for the refusal to accept for filing a particular paper was by appeal under the Local Agency Law from the decision to reject the paper, or by action in mandamus to require the acceptance of the paper.
 
 
 96
 Sec. 762. The appellate jurisdiction of the Commonwealth Court is extended to appeals from prosecutions for violation of agency organic statutes, in addition to its present jurisdiction over appeals from prosecutions for violation of agency regulations, and to appeals in election matters not within the prior appellate jurisdiction of the Supreme Court (which is unchanged by the Code).
 
 
 97
 Sec. 763. The initial appellate jurisdiction of the courts of common pleas over birth record matters (analogous to adoption proceedings) is restored by elimination of Commonwealth Court initial appellate jurisdiction. (See also Sec. 933(a)(1)(i)).
 
 
 98
 Sec. 1516. The lien of judgment provisions applicable to district justices have been patterned after the prior law applicable to community courts.
 
 
 99
 Secs. 3501-3574. No prior statutory provisions existed on finance for the Unified Judicial System created in 1968. Chapter 35 of the Code is almost entirely new and is patterned after the budget provisions applicable to an Executive department. They are carefully drawn so as not to mandate any particular level of state funding or to change the location of the tax burden for the support of the judicial system. Rather, they are administrative provisions designed to facilitate any fiscal policy which the General Assembly may adopt from time to time.
 
 
 100
 Secs. 5321-5329. The Uniform interstate and International Procedure Act (broadened along the lines of existing statutes) is substituted for the prior laws on the same subject thereby extending the reach of Pennsylvania courts over nonresident individuals to the full extent permitted by the Federal Constitution. At the same time all existing statutory requirements for designation of a statutory or resident agent for service of process are repealed. The existing statutory exemption of foreign banks and other foreign lenders from liability to service of process is eliminated. Service as an officer or director of a Pennsylvania corporation becomes a basis for long-arm jurisdiction, as suggested in Shaffer v. Heitner, 97 S.Ct. 2569, 433 U.S. 186, 53 L.Ed.2d 683 (1977).
 
 
 101
 Sec. 5522(a). The six months notice of claim requirement has been broadened to apply to personal injury claims against all government units.
 
 
 102
 Sec. 5522(b). The residual statute for actions against a public officer (i.e., for actions other than personal injury, libel, slander, contract of sale, for withholding moneys, on his official bond, etc.) is fixed at six months.
 
 
 103
 Sec. 5523. The residual statute for actions on replevin, costs, injunction and other bonds in court proceedings is fixed at one year.
 
 
 104
 Sec. 5525. The period of limitation on non-UCC sales of personal property and fixtures has been reduced from six years (or 20-year presumption of payment where the contract is under seal) to four years to conform to the four year period of the UCC. Also a new limitation of four years applicable to unwritten contracts has been added, thereby reducing the period on such contracts from six years. Contracts implied in law (e.g. warranty claims) are subject to the four-year limitation.
 
 
 105
 Sec. 5532. The law relating to absent defendants has been modernized by following a recent New York revision.
 
 
 106
 Sec. 5534. A new provision on the effect of war has been taken from the New York revision.
 
 
 
 *
 Honorable Hubert I. Teitelbaum, Chief Judge, United States District Court for the Western District of Pennsylvania
 
 
 [1]
 See 42 Pa.Cons.Stat.Ann. Sec. 8301 (Purdon 1982) (setting forth substantive cause of action for wrongful death); 42 Pa.Cons.Stat.Ann. Sec. 8302 (Purdon 1982) (providing that all causes of action survive the death of a plaintiff or a defendant)
 
 
 [2]
 The complete statutory provision comprises two components, one defining the commencement of the limitations period, and another setting forth the duration of the period. See infra, at 293-294 (text of 42 Pa.Cons.Stat.Ann. Secs. 5502(a), 5524(2)). Taken together, the two sections provide that the period of limitations is two years from the accrual of the cause of action. See Bond v. Gallen, 503 Pa. 286, 290, 469 A.2d 556, 558 (1983). See also infra part IV. For the sake of brevity, we will hereinafter refer only to Sec. 5524(2)
 
 
 [3]
 TSS is a disease caused by toxins produced by certain strains of Staphyloccus aureus bacteria. It was first described in an article published after Ms. McGowan's death. See Todd, J., et al. "Toxic Shock Syndrome," Lancet, 1978:2 (Nov. 28, 1978), 1116-18
 
 
 [4]
 Mr. and Mrs. McGowan sued individually and Mr. McGowan also sued as Administrator ad Prosequendum of Ms. McGowan's estate
 
 
 [5]
 The record indicates that upon subsequent investigation the plaintiffs learned that Ms. McGowan was experiencing menses and had been using Tampax Super Tampons at the time of her death
 
 
 [6]
 Plaintiffs have conceded that they have no viable claim against the University and Ms. Gavin and have consented to a dismissal as to these defendants. Therefore, only the plaintiffs' claims against Tampax are at issue in this appeal
 
 
 [7]
 The facts and holding of Anthony are discussed infra
 
 
 [8]
 A "creeping" disease is one whose symptoms usually become evident only after a substantial period of time, long after first exposure to the hazard which caused the disease. Asbestosis and silicosis are two examples that appear frequently in the cases. See, e.g., Ciabattoni v. Birdsboro Steel Foundry & Machine Co., 386 Pa. 179, 125 A.2d 365 (1956) (applying discovery rule to a silicosis case under the Pennsylvania Occupational Disease Act of 1939); Anthony v. Koppers Co., Inc., 284 Pa.Super. 81, 93, 425 A.2d 428, 434 (1980) (discussion of creeping diseases), rev'd on other grounds, 496 Pa. 119, 436 A.2d 181 (1981)
 
 
 [9]
 A helpful commentary on Anthony and its significance is contained in Note, 55 Temp.L.Q. 625 (1982)
 
 
 [10]
 Justice Wilkinson authored the plurality opinion, in which Justices Flaherty and Roberts joined. Justices Larsen and Kauffman concurred in the result and did not file separate opinions. Chief Justice O'Brien filed a dissenting opinion, 496 Pa. at 125, 436 A.2d at 185 (O'Brien, C.J., dissenting). Justice Nix did not participate
 It is interesting to note that Justice Roberts, a member of the plurality in Anthony, also sat by designation on the Superior Court panel that declined to extend the rule in Anthony to actions governed by Sec. 5524. See supra part II (discussion of Pastierik ).
 While it has no bearing upon our disposition of this case, it is also interesting to note that only two Justices who participated in the Anthony case--Justices Larsen and Flaherty--remain on the Pennsylvania Supreme Court.
 
 
 [11]
 The two terms--"injury" and "accrual of a cause of action"--may not be equally "ambiguous," however. See Ciabattoni v. Birdsboro Steel Foundry & Machine Co., 386 Pa. 179, 125 A.2d 365 (1956) (distinguishing, for purposes of applying the discovery rule, between "occurrence of the injury" and "the beginning of the disability." Discovery rule not applicable to the former in actions under Workmen's Compensation Act, but is applicable to actions brought under the Occupational Disease Act)
 
 
 [12]
 Perhaps a distinction between personal injury and survival actions can be sustained on the basis of their different origins. See Del Percio v. Johns-Manville, slip op. at 4-5 (noting that survival action is a statutory right, and that before 1937 the cause of action of a totally injured plaintiff who did not institute suit within his or her lifetime died with the decedent). But this rationale, if it explains Anthony, is not articulated in the opinion. At all events, such a distinction seems insufficient to survive the legislative changes discussed infra
 
 
 [13]
 Because Ms. McGowan died four months after the new statute became effective, the new statute clearly applies, and the parties do not argue otherwise
 
 
 [14]
 The comments or report of the Pennsylvania Bar Association Special Committee on the Judicial Code and the Pennsylvania State Trial Judge's Committee on the Judicial Code, the drafters of Title 42, may be consulted in construing or applying a Pennsylvania statute so long as such comments or reports were available prior to the consideration of the statute by the General Assembly. 1 Pa.Cons.Stat.Ann. Sec. 1939 (Purdon Supp.1984)
 
 
 [15]
 Tampax attempts to counter the force of this evidence by focusing on two bits of legislative history. First, Tampax cites the remarks of Representative Spencer:
 Mr. Speaker, I urge a "yes" vote on this conference report for two reasons. Basically, 9 years ago this measure started out as a codification of laws relative to the judiciary, and in the legislative mill some substantive amendments were put in. Mr. Eckensberger and others felt very sincere about it. I do not question them at all. But this is such a technical bill that the conference committee felt that they should not have substantive amendments to it. Therefore, these substantive amendments were taken out in the hopes that we could get this 9 years of toil and work over with and get the codification, a true codification. Then later on if amendments are in order, such as random jury selection, such as Mr. Eckensberger's bill and Mr. Reed's, these can be put in.
 Pa.Leg.J. 5863 (June 29, 1976) (remarks of Rep. Spencer) (emphasis added). Second, Tampax adverts to the remarks of Representative Berson, who urged a fellow representative not to offer a substantive amendment because "[t]his is a codification compilation [sic] bill." Pa.Leg.J. 5522 (June 21, 1976) (remarks of Rep. Berson).
 We are unpersuaded by this argument. In our view, the excerpts cited by Tampax represent at best an effort to avoid any last minute hitches in securing passage of complex and comprehensive legislation that had consumed a great deal of time and energy over many years. Given the urgency of the context in which they occurred, and the strong countervailing evidence set forth in the text, we conclude that these comments will not bear the weight that Tampax would place on them.
 
 
 [16]
 Tampax urges that the Explanation clarifies the legislative intent that the discovery rule does not apply to wrongful death and survival actions. In support, Tampax cites the six "Examples" appearing in the portion of the Explanation dealing with Sec. 5524. Example 2 is typical:
 Death occurs on June 1, 1978. Action in trespass filed June 15, 1980 (within two years after Sec. 5524 takes effect). Action barred by Sec. 5524, because 1 Pa.C.S. Sec. 1975 provides, in effect, that the 26 days between June 1 and June 27, 1978 (the effective date of the Code) are charged against the new two-year period. See also JARA Sec. 3(a).
 The lack of any reference to a "discovery rule," argues Tampax, suggests that the rule does not apply in death cases.
 We believe that Tampax places too much emphasis on the Examples. Their purpose is simply to illustrate the operation of the statutes of limitations during the period of transition between the prior and current regimes. Several of the examples, for instance, make reference to trespass actions without any mention of the discovery rule. But it is clear that the discovery rule does apply to this class of actions. See Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 503 Pa. 80, 468 A.2d 468 (1983); Lewey v. H.C. Fricke Coke Co., 166 Pa. 536, 31 A. 261 (1895).
 
 
 [17]
 The precedential effect of Frederick for this case is enhanced by the similarity, noted by one commentator, between the relevant principles of statutory construction in Frederick and in Anthony. Under California law, as under the law of Pennsylvania, where statutory language is unambiguous, courts are duty bound to follow the plain language. Compare Cal.Civ.Proc.Code Sec. 1858 (West 1955) (courts should "not insert what has been omitted [from a statute], or [o]mit what has been inserted"), with 1 Pa.Cons.Stat.Ann. Sec. 1921(b) (where statutes are free from ambiguity, "courts may not disregard the letter of the law under the pretext of pursuing its spirit"). See Note, 55 Temp.L.Q. 625, 636 & n. 7. Other jurisdictions, in contrast, appear to allow courts more latitude in their interpretation of seemingly unambiguous statutory provisions. See id., at 636-37; Fure v. Sherman Hosp., 64 Ill.App.3d 259, 21 Ill.Dec. 50, 380 N.E.2d 1376 (1978) (applying discovery rule in context of wrongful death action even though statute measured period from date of "death"); Ill.Rev.Stat. ch. 131, Sec. 1.01(19) ("[all] general provisions, terms, phrases, and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out")
 
 
 [18]
 Anthony, however, had not been decided when the Code was enacted. At that time, the judicial decision most relevant to the question whether the discovery rule applied in the wrongful death setting was Schaffer v. Larzelere, 410 Pa. 402, 189 A.2d 267 (1963). The Superior Court in Anthony concluded that Larzelere had applied the discovery rule in this context. 284 Pa.Super. at 102-04, 425 A.2d at 439-40. The Supreme Court in Anthony subsequently announced that the references in Larzelere to the applicability of the discovery rule "constitute dicta." Anthony, 496 Pa. at 123 n. 7, 436 A.2d at 184 n. 7. Under these circumstances, it is not at all clear that the General Assembly did not assume that the discovery rule would apply to death actions under Sec. 5524. Compare 1 Pa.Cons.Stat.Ann. Sec. 1922(4) (Purdon Supp.1984) (providing that where a court of last resort has given a certain meaning to a particular term, the General Assembly is presumed to intend this meaning in any statutes incorporating the term)
 
 
 [19]
 The text of the statute of limitation, in pertinent part, provides as follows:
 (c) Time limitations on actions to recover benefits--
 (1) If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier. If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant; may be commenced not later than two years after the last payment of benefits.
 (2) If no-fault benefits have not been paid to the deceased victim or his survivor or survivors, an action for survivor's benefits may be commenced not later than one year after the death or four years after accident from which death results, whichever is earlier. If survivor's benefits have been paid to any survivor, an action for further survivor's benefits by either the same or another claimant may be commenced not later than two years after the last payment of benefits. If no-fault benefits have been paid for loss suffered by a victim before his death resulting from the injury, an action for survivor's benefits may be commenced not later than one year after the death or six years after the last payment of benefits, whichever is earlier.
 Pa.Stat.Ann. tit. 40, Sec. 1009.106(c) (Purdon Supp.1984).
 
 
 [20]
 These provisions also establish an outer limit of four years within which applicable to suits for no-fault benefits must be brought. See supra note 19 (text of Sec. 1009.106(c)(1) and (2)). These limitations also reflect the legislative concern that litigation arising out of automobile accidents be handled expeditiously so that insurance rates for drivers generally can be minimized, even at the expense of potential hardships in some cases. No analogous limiting provision applies generally to civil actions governed by Sec. 5524
 
 
 *
 The contents of this Appendix are taken from Pennsylvania Bar Association, Judicial Code Explanation, "Legislative Bulletin," (Special Issue May 17, 1978--No. 2), reprinted in 42 Pa.Cons.Stat.Ann. Sec. 101-700, at xi-xxxii (Purdon 1981)