Marie GAVULA and Donald Gavula,
H/W, Appellants,

v.

ARA SERVICES, INC. and Air/Leisure
Services/ International Group, Inc.,
and Ogden Services Corporation, and
Ogden Aviation Service Company of
Pennsylvania, and Ogden Aviation
Service Company of New York, Inc.,
Appellees.

Superior Court of Pennsylvania.

Argued Oct. 20, 1999.
Filed June 22, 2000.

**18**

Peter M. Patton, Philadelphia, for appellants.

Donald M. Davis, Philadelphia, for appellees.

Before CAVANAUGH, KELLY and BECK, JJ.

BECK, J.:

¶ 1 Plaintiffs-appellants Marie and Donald Gavula filed this appeal from the trial court's grant of summary judgment in favor of defendants-appellees ARA Services, Inc. and Air/Leisure/Services International Group, Inc. ("appellees").[1] We affirm.

¶ 2 The relevant undisputed facts are set forth in the trial court's opinion:

> On September 17, 1992, plaintiff, Marie Gavula, was injured in a motor vehicle accident during the course of her employment with Ogden Ground Services, Inc. ("Ground Services"). At the time she was a passenger in a step van owned by her employer and operated by a co-employee. The door of the van was kept open while the van was in operation. Ms. Gavula, a passenger, was standing when the driver had to stop the van. Ms. Gavula was then thrown from the van, and injured. Plaintiff alleges that the modifications made to the van, including rearranging the interior furnishings, had rendered it defective and that said defects were the cause of her injuries.
>
> From 1969 to 1986, plaintiff's employer, Ground Services, was a wholly owned subsidiary of defendant ARA. In 1986 a change in corporate structure made Ground Services a subsidiary of The ARA Group, itself a subsidiary of ARA. In September, 1989, Ground Services was transferred to another business unit of ARA, Air/Leisure Services/International ("Air/Leisure"). In 1990, ARA sold all the outstanding and issued stock of Ground Services to Ogden Allied Services Group ("Ogden"). The stock sale transferred all the business and assets of [Ground Services], including the van involved in plaintiff's accident.

¶ 3 Appellants filed a complaint in which they alleged three causes of action: 1) that appellees were negligent with respect to, *inter alia*, their design of the interior of

---

1. Other entities listed in the caption, Ogden Services Corp., Ogden Services Company of Pennsylvania, Inc., and Ogden Aviation Services Company of New York, Inc., are not involved in this appeal.

the step van they sold to Ogden, and that this negligence was the proximate cause of her injuries; 2) that appellees were "sellers" within the meaning of Section 402A of the Restatement (Second) of Torts and were therefore strictly liable for the alleged defects in the step van they sold to Ogden; and 3) that appellees breached a warranty of merchantability when they sold the step van to Ogden.

¶ 4 Appellees filed a motion for summary judgment, arguing that they were neither "sellers" nor "merchants" as envisioned by Section 402A of the Restatement and the Uniform Commercial Code, 13 Pa. C.S.A. § 2314, and that they therefore could not be held liable in strict products liability or for a breach of warranty. Appellees did not specifically move for summary judgment on the negligence count of appellants' complaint. The trial court granted summary judgment and dismissed the entire case.

¶ 5 In this appeal, appellants challenge the trial judge's grant of summary judgment in favor of appellees. Appellees claim that summary judgment was proper on all counts, and also that the instant appeal should be quashed because it was not timely filed. We address the timeliness issue first.

¶ 6 On February 12, 1998, the trial judge entered an order granting appellees' summary judgment motion, and dismissing with prejudice the entire complaint against appellees. The appellants did not file an appeal at this time, because other defendants remained in the case. The docket indicates that the rest of the case was settled on September 15, 1998. The instant appeal was not filed until April 7, 1999, and appellees argue that this was well beyond the expiration of the thirty day appeal period set forth in Pa.R.App.P. 903(a) (notice of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken).

¶ 7 However, a close review of the docket and applicable rules reveals that the instant matter did not become appealable until March 30, 1999. The docket entry for September 15, 1998, the date when the matter was apparently settled, does not contain the requisite notation that notice was given to the parties in accordance with Pa.R.Civ.P. 236 (the prothonotary shall immediately give written notice of the entry of any order, decree or judgment to each party's attorney of record).

¶ 8 Before an order of the lower court becomes appealable, it must be entered on the docket. Pa.R.App.P. 301(a). Rule 108(b) of the Pennsylvania Rules of Appellate Procedure provides that:

> the date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure *shall be the day on which the clerk makes the notation on the docket that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)*.

Pa.R.App.P. 108(b) (emphasis added).

¶ 9 Notwithstanding the fact that the trial judge entered an order in September 1998 declaring that the matter had been settled, the appropriate notation that Rule 236 notice had been given was not included in the docket at that time. The notation required by Pa.R.App.P. 108(b) was not made in the docket until appellants filed an Order to Settle, Discontinue and End on March 30, 1999. This later docket entry contains the required Rule 236 notice, and it was only at this time that the matter became appealable. *Frazier v. City of Philadelphia*, 557 Pa. 618, 735 A.2d 113, 115 (1999); *Jara v. Rexworks, Inc.*, 718 A.2d 788 (Pa.Super.1998). *See also Baker v. Cambridge Chase, Inc.*, 725 A.2d 757 (Pa.Super.1999) (prior orders dismissing fewer than all claims or defendants were made final when Order to Settle, Discontinue and End was filed). Appellants' notice of appeal was therefore timely filed on April 7, 1999.

¶ 10 We now address the merits of the appeal. Appellants argue that the trial judge erred when she dismissed their

claim that the step van in which Marie Gavula was a passenger was defective, and that appellants should be held strictly liable for her injuries pursuant to Restatement (Second) of Torts Section 402A. Section 402A provides, in pertinent part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product ...

Restatement (Second) of Torts § 402A.

■ ¶ 11 Appellants assert that the sale of assets, including the step van involved in the accident, was enough to characterize appellees as "sellers" within the terms of Section 402A for purposes of strict liability. We disagree. The drafters of Section 402A summarized the policies underlying the doctrine of strict liability in Comment c thereto:

On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper ones to afford it are those who market the products.

Restatement (Second) of Torts § 402A Comment c; *Frey v. Harley Davidson Motor Co.*, 734 A.2d 1, 18 (Pa.Super.1999)

(Beck, J., dissenting). Therefore, although the language of § 402A refers generally to "sellers," the policy interests it is designed to promote are not promoted by the application of strict liability to any and all kinds of "sales" transactions.

¶ 12 In fact, Comment f to Section 402A discusses the definition of "seller" and provides that strict liability is "not intended to apply to sales of the stock of merchants out of the usual course of business, such as execution sales, bankruptcy sales, bulk sales, and the like." Restatement (Second) of Torts § 402A, Comment f. Moreover, our Supreme Court has held that the term "seller," as used in § 402A, is used generically to include all suppliers of products who, *because they are engaged in the business of selling or supplying a product,* may be said to have "undertaken and assumed a special responsibility" toward the consuming public and who are in a position to spread the risk of defective products. *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 898 (1975).

¶ 13 Appellant casts her argument as if appellees were in the business of selling vans, and as such, were subject to strict liability. Appellant misperceives the posture of appellees. They were not in the business of selling vans either on their own or through their subsidiary Ground Services. Correctly viewed, ARA was the parent company of Ground Services, which then sold all of the subsidiary's stock and assets to Ogden. ARA's actions in doing so do not satisfy the definition of "seller" in § 402A. *Berkebile v. Brantly Helicopter, supra.* Nothing in 402A contemplates that an entity selling all of its stock and assets to an unrelated successor entity would be subject to strict liability. Indeed, the purposes of section 402A strict seller liability, as described in Comments c and f, would not be served if such were the law. The stock sale in this case is simply not the kind of "sale" envisioned by § 402A strict liability. *See also Cafazzo v. Cent. Med. Health Serv.*, Inc., 542 Pa. 526, 668 A.2d 521, 523 (1995) (hospital and doc-

tor who implanted defective mandibular prosthesis not "sellers" for purposes of § 402A strict liability since they were not engaged in the business of selling); *Musser v. Vilsmeier Auction Co.*, 522 Pa. 367, 562 A.2d 279 (1989) (auctioneer could not be held strictly liable under § 402A for products it merely assisted owner in selling). We therefore affirm the trial judge's decision granting summary judgment on the issue of § 402A strict products liability.[2]

¶ 14 We reach the same conclusion with respect to appellants' breach of warranty claim. Under the Uniform Commercial Code, there is an implied warranty of merchantability in a contract of sale "if the seller is a merchant with respect to goods of that kind." 13 Pa.C.S. § 2314. The Code defines "merchant" as a person who deals in goods of the kind, or one who otherwise holds himself out as having knowledge or skill peculiar to the goods involved. 13 Pa.C.S. § 2104. A person selling substantial corporate assets to another corporation therefore is not a "merchant" for purposes of a warranty of merchantability. The Code's definition of "merchant" is not even as broad as the Restatement's definition of "seller" for purposes of § 402A liability, and therefore no liability would attach for an implied warranty of merchantability under the UCC. *See also* Restatement (Second) of Torts § 402A, comment f (basis for implied

warranty of merchantability is lacking where seller is not merchant who deals in such goods, limited by UCC § 2–314).

¶ 15 Appellants also claim that appellees breached an express warranty. In their complaint, appellants alleged that appellees "represented, and in other manner, expressed, warranties that the Modified Step Van was safe for use for the purposes intended, and was of merchantable quality," and that such representations were false.

¶ 16 The only "express warranty" in this case appeared in the Stock Sale Agreement between Air/Leisure Services/International Group and Ogden. In the Agreement the seller promised Ogden that the "tangible assets used by the Company in the operation of the Business are in sufficient operating condition and repair to conduct the Business as presently conducted subject to wear, tear and use in the ordinary course." The trial judge did not discuss this claim, but dismissed it along with the claim of implied warranty of merchantability. We hold that, even if there existed an action for breach of express warranty based on language in the contract between appellees and Ogden, it would be Ogden's action and not that of appellants, who were not parties to the contract. *See, e.g., Pritchard v. Liggett & Myers Tobacco Co.*, 350 F.2d 479 (3d Cir. 1965) (under Pennsylvania law, one who was not purchaser could not maintain

---

2. We further note with interest the policy considerations behind the Restatement (Third) of Torts: Products Liability § 12, "Liability of Successor for Harm Caused by Defective Products Sold Commercially by Predecessor":

A successor corporation or other business entity that acquires assets of a predecessor corporation or other business entity is subject to liability for harm to persons or property caused by a defective product sold or otherwise distributed commercially by the predecessor if the acquisition:
(a) is accompanied by an agreement for the successor to assume such liability; or
(b) results from a fraudulent conveyance to escape liability for the debts or liabilities of the predecessor; or

(c) constitutes a consolidation or merger with the predecessor; or
(d) results in the successor becoming a continuation of the predecessor.

Section 12 of the Restatement Third provides that there should be no successor products liability except in the four enumerated situations. This type of restriction on products liability takes into account the economic benefits of ending liability once a manufacturer sells its assets to a successor. *See* Michael D. Green, *Fairness and Successor Liability: The Limits of the Common Law Process*, **KAN.J.L. & PUB.POL'Y**, Fall 1998, at 119–121 (discussing same).

claim of breach of express warranty where there was absence of privity). We therefore affirm the dismissal of this claim as well.

¶ 17 Finally, we turn to appellants' claim that the trial judge erred in dismissing their negligence claim, despite the fact that appellees did not move for summary judgment on that claim. The trial judge did not discuss this issue in her opinion. We must consider the issue nonetheless because, if appellants did not properly plead negligence, we must decide the issue as a matter of law.

¶ 18 Appellees make two arguments on this point. First they assert that there was no negligence claim in this lawsuit because the relevant counts were not specifically identified as "Negligence" counts in appellants' complaint. However, Count I of the complaint is clearly intended to be a claim for negligence. *See Weiss v. Equibank*, 313 Pa.Super. 446, 460 A.2d 271 (1983) (complaint must simply apprise defendant of nature and extent of claim so that defendant has notice and may meet plaintiff's proof at trial; plaintiff is not obliged to identify legal theory underlying complaint); *DelConte v. Stefonick*, 268 Pa.Super. 572, 408 A.2d 1151 (1979) (same).[3]

■ ¶ 19 Appellees next argue that the claim for negligence is inadequate because it lacks an allegation of duty. It is our most basic hornbook law that, in order to make out a claim of negligence, a plaintiff must allege that the defendant owed her a duty to conform to a certain standard of conduct, the defendant breached that duty, and the breach was the proximate cause of actual damages. Prosser and Keeton on Torts, § 30 (5th Ed.1984); *Filter v. McCabe*, 733 A.2d 1274 (Pa.Super.1999); *Elias v. Lancaster Gen. Hosp.*, 710 A.2d 65

(Pa.Super.1998); *Casey v. Geiger*, 346 Pa.Super. 279, 499 A.2d 606 (1985).

■ ¶ 20 We hold as a matter of law that appellants have not alleged sufficient facts to make out a claim for negligence. Specifically, they have not established that appellees, the former owners of the subject step van, owed Marie Gavula a duty of care at the time of her accident. Appellants have simply alleged that appellees were "negligent" in various ways related to their modification of the step van. These allegations of negligence are incomplete, however, without any correlative factual averments as to a duty owed by appellees. *Pike County Hotels Corp. v. Kiefer*, 262 Pa.Super. 126, 396 A.2d 677, 681 (1978). We cannot infer such duty from allegations about the nature of the work performed by appellees in modifying the van. *Id. See also Carlotti v. Employees*, 717 A.2d 564 (Pa.Super.1998) (credit union had no duty to inform employee of terms of insurance policy); *Elias v. Lancaster Gen. Hosp.*, *supra* (hospital did not owe duty to preserve foreign objects removed from plaintiff's body); *Stempler v. Frankford Trust Co.*, 365 Pa.Super. 305, 529 A.2d 521 (1987) (mere allegation that mortgage company performed inspection of house did not provide basis for duty owed to buyers to discover and report deficiency in occupancy permit).

■ ¶ 21 Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time. *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983); *Swift v. Northeastern Hosp.*, 456 Pa.Super. 330, 690 A.2d 719 (1997). Here, appellants averred no relationship with appellees that would give rise to a duty. *See Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983) (lawyer who drafted will did not owe duty

---

**3.** This argument by appellees is particularly specious given the fact that the claims for strict liability and breach of warranty were not specifically identified as such either, and appellees did not raise that as a reason for granting summary judgment or dismissing those claims. Obviously, the averments of the complaint made out claims for strict liability and breach of warranty that were readily interpreted as such by appellees, even though they were not so titled.

to intended beneficiary such that beneficiary could have negligence action against lawyer); *Ferry v. Fisher*, 709 A.2d 399 (Pa.Super.1998) (defendant car dealer did not owe duty to plaintiff who was injured in accident with car being test driven by potential buyer). We therefore affirm the trial judge's grant of summary judgment disposing of the entire case against appellees.

¶ 22 Order granting summary judgment affirmed.