**Michael and Kelly YURCIC, Plaintiffs**

v.

**PURDUE PHARMA, L.P., Purdue Pharma, Inc., Purdue Frederick Co., Abbott Laboratories, Abbott Laboratories, Inc., Morton Rubin, M.D., and Howard R. Cohen, M.D., Defendants**

No. CIV.A.1:CV–03–175.

United States District Court, M.D. Pennsylvania.

March 29, 2004.

388

Michael Yurcic, Sol H. Weiss, Anapol, Schwartz, Weiss & Schwartz, Philadelphia, PA, for Plaintiff.

Katherine Menapace, Akin, Gump, Strauss, Hauer & Feld, LLP, Philadelphia, PA, Edward F. Mannino, Jason A. Snyderman, Akin, Gump, Strauss, Hauer & Feld, LLP, Philadelphia, PA,for Purdue Pharma, Inc., defendant.

Joseph E. O'Neil, George J. Lavin, Jr. Associates, Philadelphia, PA, Elizabeth C. Honeywell, Venable, Baetjer and Howard, LLP, Baltimore, MD, Morton Rubin, M.D., Naulty Scaricamazza & Mcdevitt, Howard R. Cohen, White & Williams, Philadelphia, PA, for Abbott Laboratories, Defendant.

### MEMORANDUM AND ORDER

KANE, District Judge.

Before this Court are two dispositive motions: (1) a motion for judgment on the

pleadings filed by Defendants Purdue Pharma, L.P., Purdue Pharma, Inc., and Purdue Frederick Company (together, "Purdue Defendants"); and (2) a motion for summary judgment filed by Defendants Abbott Laboratories and Abbott Laboratories, Inc. (together, "Abbott Defendants"). The motions have been fully briefed and the Court heard oral argument. For the reasons discussed below, the Purdue Defendants' motion will be granted and the Abbott Defendants' motion will be granted.

## V. Background

Plaintiffs, Michael and Kelly Yurcic, husband and wife, brought suit against several pharmaceutical companies and two of Mr. Yurcic's doctors for injuries sustained as a result of Mr. Yurcic's ingestion of and addiction to OxyContin, a powerful prescription pain medication. Mr. Yurcic's medical malpractice claims against Drs. Rubin and Cohen have been dismissed. The remaining Defendants are the Purdue Defendants and the Abbott Defendants (together "pharmaceutical Defendants"). Mr. Yurcic filed claims against the pharmaceutical Defendants for negligence, fraud, and breach of express warranty. Mrs. Yurcic's only claim is for loss of consortium.

Plaintiffs' complaint asserts that Oxy-Contin, a time release form of the pain reliever OxyCodone, was developed by Purdue and marketed by Abbott. Purdue later developed an immediate release form of OxyCodone, known as OxyIR, and marketed the drug to be prescribed in conjunction with OxyContin. Plaintiffs allege that Defendants used aggressive marketing strategy, used coercive tactics, made misrepresentations, and failed to disclose the risks associated with the drug. The highly successful campaign promoted the drug as ensuring smooth pain relief with little risk of addiction, while Defendants knew that neither claim was true. Plaintiffs allege that this marketing was directed at doctors and pharmacists, and that Defendants also marketed the drugs directly to the public via a website. Plaintiffs assert that as a result of marketing which did not provide full information and failed to warn of abuse potential, the drug was inappropriately prescribed, causing addiction and heightened risk of addiction. Plaintiffs further allege that Defendants facilitated its improper use by providing the drug to pharmacies in Mexico where a prescription would not necessarily be required, and that Defendants failed to incorporate features in the product that could reduce the risk of addiction.

Mr. Yurcic was first prescribed OxyContin in October of 1996 for his injured knee, and more or less continually took the mediation through August, 1999. In March, 1999 following a total knee replacement surgery, Mr. Yurcic was given OxyIR in addition to OxyContin, and was subsequently treated for overdose of the drugs. However, he continued to be prescribed OxyContin after his release from the rehabilitation center. In November, 1999, Mr. Yurcic started a narcotic withdrawal plan, which was unsuccessful, and ultimately enrolled in an in-patient detoxification program at the Caron Foundation on December 27, 1999. Mr. Yurcic has not taken any narcotic pain medications since then; however, he continues to suffer pain from his knee as well as addiction related problems.

This case was transferred to this Court from Judge Legrome D. Davis of the Eastern District of Pennsylvania. Plaintiffs had originally brought the action in the Court of Common Pleas, Philadelphia County on January 4, 2002. The pharmaceutical Defendants removed the action to federal court, asserting diversity jurisdic-

tion arguing that the doctors were fraudulently joined in order to destroy diversity. On consideration of Plaintiffs' motion to remand and Dr. Cohen's motion to dismiss, on November 7, 2002, Judge Davis ruled that the doctors had been fraudulently joined because the alleged acts of malpractice occurred outside the two-year statute of limitations; therefore the malpractice claims against the Defendant doctors were dismissed from the action and diversity jurisdiction was proper. Judge Davis also granted the Purdue Defendants' motion to transfer venue to the Middle District.

In reaching his decision, Judge Davis noted that Mr. Yurcic was treated for his addiction before January 4, 2000 and the Defendant doctors had prescribed the medication prior to that date. Plaintiffs had argued that the discovery rule exception should apply to the statute of limitations because Mr. Yurcic did not discover his injuries until January 17, 2000, when he was discharged from the detox program. Judge Davis stated:

> Plaintiffs' own assertions belie any attempt to rely on the discovery rule exception. Plaintiffs specifically allege that on or about December 17, 1999, Mr. Yurcic agreed to enroll in an in-patient detoxification program, and that on or about December 27, 1999, Mr. Yurcic was admitted to the Caron Foundation "for treatment of his addiction to Oxy-Contin." Complaint ¶¶ 76, 77. Thus, the Plaintiffs' assertion that Mr. Yurcic did not know of his injuries until January 17, 2000–the day he was discharged from the Caron Foundationis untenable.

(Order at 4).

The claims remaining before this Court are for negligence (Count I); breach of express warranty (Count II); fraud (Count III); and loss of consortium (Count VI).

## VI. *Purdue Defendants' Motion*

In their motion for judgment on the pleadings, the Purdue Defendants argue that because Plaintiffs' negligence and fraud claims, like the medical malpractice claims dismissed by Judge Davis, are subject to a two year statute of limitations, the law of the case doctrine requires that they be dismissed. Defendants also argue that Plaintiffs have failed to state a claim against them for breach of express warranty because they have not alleged that Mr. Yurcic read or was aware of any express warranties and therefore have not alleged reliance, an element of the claim.

### A. Standard of Review

A motion for judgment on the pleadings made pursuant to Federal Rule of Civil Procedure 12(c) is treated under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Shelly v. Johns–Manville Corp.,* 798 F.2d 93, 97 n. 4 (3d Cir.1986). A motion for judgment on the pleadings will only be granted where the moving party has established that no material issue of fact remains to be resolved, and that the movant is entitled to judgment as a matter of law. *Inst. for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc.,* 931 F.2d 1002, 1005 (3d Cir.1991). In determining whether a material issue of fact exists, the court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 406 (3d Cir. 1993).

### B. Statute of Limitations and the Law of the Case

"The law of the case doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation." *Hamilton v. Leavy,* 322

F.3d 776, 786 (3d Cir.2003). Law of the case rules apply to subsequent rulings by different judges in same case. *Casey v. Planned Parenthood of Southeastern Pennsylvania,* 14 F.3d 848, 856 n. 11 (3d Cir.1994). The doctrine is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity. *In re City of Philadelphia Litig.,* 158 F.3d 711, 717–18 (3d Cir.1998). The doctrine, however, precludes review of only those legal issues that the prior court actually decided, either expressly or by implication. *Southco, Inc. v. Kanebridge Corp.,* 324 F.3d 190, 194 (3d Cir.2003). It does not restrict the power of the court, but rather governs its exercise of discretion. *In re City of Phila. Litig.,* 158 F.3d at 718. Therefore, the law of the case doctrine does not preclude reconsideration of previously decided issues in "extraordinary circumstances," such as where (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice. *Id.; Southco,* 324 F.3d at 194.

It must therefore be determined: (1) whether the statute of limitations for the negligence and fraud claims was decided by the prior determination; and if so (2) whether this case falls within any categories of extraordinary circumstances which would allow this Court to depart from the law of the case doctrine. Plaintiffs argue that the issues decided by the Eastern District Court are different than those before this Court and that the present issues were not decided expressly or by necessary implication. They argue that the statute of limitations is not governed by the same date as the medical malpractice claims dismissed by the court, but by a date in July, 2001, when OxyContin's label was changed pursuant to an FDA di-

rective.[1] Plaintiffs argue in the alternative that this label change constitutes "new evidence" which warrants reconsideration of the previous court order.

(1) *Whether the Statute of Limitations was Decided by Prior Court Order*

██ On motion to dismiss, Plaintiffs argued that they did not allege that Mr. Yurcic was addicted to OxyContin at any time prior to January 17, 2000, and that because he didn't know of cause of his injuries until release date, the limitations period began to run on or about January 17, 2000, upon release from the Caron Foundation. Judge Davis firmly rejected this contention and held that Plaintiff was aware of his injuries on or before December 27, 1999. Therefore, the law of the case is that Plaintiff knew or should have known of his injuries on or before December 27, 1999, more than two years before he filed this action.

The negligence and fraud claims against the Purdue Defendants are subject to a two year statute of limitations. 42 Pa. C.S.A. § 5524(7); *see also City of Philadelphia v. Lead Indus. Ass'n, Inc.,* 994 F.2d 112, 122 (3d Cir.1993) (negligence and fraud claims for injuries from lead paint accrued when city was on notice of health hazards); *Montanya v. McGonegal,* 757 A.2d 947, 950 (Pa.Super.2000) (discussing accrual of cause of action for negligence). Thus, unless Plaintiffs' claims fall under an exception to the law of the case doctrine and as long as these claims are governed by the same rules as the statute of limitations already decided, the law of the case doctrine would require that this Court reach the same conclusion and dismiss these claims.

---

1. The content of the OxyContin label change is not provided by Plaintiffs.

(2) *Whether the New Evidence Exception to the Law of the Case Doctrine Applies*

■ Plaintiffs argue that the new evidence exception applies here due to the July 2001 label change. The rationale behind the new evidence exception to the law of the case doctrine is that when the record contains new evidence, "the question has not really been decided earlier and is posed for the first time." *Bridge v. United States Parole Comm'n*, 981 F.2d 97, 103 (3d Cir.1992). But this is so only if the new evidence differs materially from the evidence of record when the issue was first decided and if it provides less support for that decision. *In re City of Phila. Litig.*, 158 F.3d at 720. Accordingly, if the evidence at the two stages of litigation is "substantially similar," or if the evidence at the latter stage provides more support for the decision made earlier, the law of the case doctrine will apply. *Hamilton v. Leavy*, 322 F.3d 776, 786–787 (3d Cir. 2003). Here, the label change does not meet the criteria of new evidence which would warrant reconsideration of the statute of limitations issue since it was in the record before Judge Davis when he decided the statute of limitations issue.

(3) *Whether Plaintiffs' Claims are Time–Barred*

■ Even assuming, arguendo, that the law of the case doctrine did not govern this issue, Plaintiffs' argument that they only became aware of their claim against the pharmaceutical companies when the label change occurred must fail. The accrual of Plaintiffs' cause of action is not dependant on this label change. For tort actions, the general rule is that the cause of action accrues at the time of the last event necessary to complete the tort. *See* 42 Pa. C.S.A. § 5502(a). Usually, this is at the time the plaintiff is injured. *United States*

*v. Kubrick*, 444 U.S. 111, 120, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). An injured party, however, cannot make a claim until he has or should have had notice that he had an action to bring. Thus, the Supreme Court has held that an injured party's cause of action does not accrue until he learns of his injury. *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). In most cases, when a person learns of his injury, he is on notice that there has been an invasion of his legal rights, and that he should determine whether another may be liable to him. *City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 122 (3d Cir.1993) (legislative action put City on notice of health hazards of lead-based paint; therefore, "the City reasonably should have known that it was injured by the use of such paint in its buildings"). However, in some circumstances, a person may know that he has been injured but not be sufficiently appraised by the mere fact of injury to understand its cause. *See McGowan v. University of Scranton*, 759 F.2d 287 (3d Cir.1985) (statute of limitations under wrongful death and survival act statutes may be tolled when a plaintiff is unable, despite exercise of due diligence, to determine the cause of decedent's death, where plaintiff's decedent died of toxic shock syndrome at a time when the cause of toxic shock syndrome had not been discovered by medical science). In those circumstances, when the fact of injury alone is insufficient to put an injured party on notice of its cause, the Supreme Court has indicated that the accrual of the claim would be delayed until the injured party learns of both the fact of his injury and its cause. *Kubrick*, 444 U.S. at 122, 100 S.Ct. 352. The rationale of this discovery rule is that the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been com-

mitted and that he needs to investigate to determine whether he is entitled to redress. *Zeleznik v. United States,* 770 F.2d 20, 22–23 (3d Cir.1985).

The Third Circuit has ruled that a tort action accrues at the time plaintiffs knew of the injury and its immediate cause, regardless of the existence of other causes that may be undiscoverable to them. *See Zeleznik,* 770 F.2d 20 (parents cause of action for murder of son accrued at time they knew he was murdered and not when they discovered additional information about INS involvement, even though it would have been impossible for them to discover INS involvement prior to expiration of statute of limitations);[2] *see also Perna v. United States,* 36 Fed.Appx. 61 (3d Cir.2002) (Plaintiff's claim against government for injuries sustained as result of wrongful conduct of FBI informant accrued when plaintiff suffered injuries, not when he discovered tortfeasor's status, even if it would have been nearly impossible for him to discover tortfeasor's involvement with FBI until after limitations period had run).

■ Plaintiffs argue that the discovery rule should apply in this case. However, this case is less like the *McGowan* case and more like the *Zeleznik* case. Plaintiff knew of his injury by December 27, 1999, and knew of the immediate cause of his injury-addiction to OxyContin. At that point, it was up to him to research whether he had a claim against the manufacturers or marketers of the drug. The label change did not indicate new medical knowledge that was unknown to plaintiff previously, as the discovery of TSS was in

*McGowan.* Plaintiff might have ascertained that the original label was inadequate on the basis of his injuries, if indeed the label has anything to do with his negligence and fraud claims. For example, in his negligence claim, Plaintiff asserts that Defendants "failed to exercise ordinary care in the design, research, development, manufacture, sale, testing, quality assurance, quality control and/or distribution of OxyContin into interstate commerce, because the Pharmaceutical Defendants knew or should have known that the product, OxyContin, created the risk of unreasonable, dangerous, or untoward side effects." (Complaint ¶ 93). They also assert that they were "negligent in the design, manufacture, testing, promotion, advertising, warning, labeling, marketing and sale of OxyContin" and list several examples. *Id.* at ¶ 95. Other than perhaps negligence in labeling, it is unclear how the label change is relevant to any of these assertions. If Defendants were negligent in designing the product, for instance, the label change would have no bearing on either Plaintiff's cause of action or his ability to discover that he had a cause of action, the label change, could not have alerted him to the possibility that the product was negligently designed.

Since the law of the case is that Mr. Yurcic knew of his injuries before December 27, 1999, outside the statute of limitations for his negligence and fraud claims, and no exceptions to the law of the case doctrine apply, these claims will be dismissed against all Defendants. Further-

---

**2.** The Court indicated that it would reach a different result had there been evidence that the INS had actively concealed its involvement. *Zeleznik,* 770 F.2d at 24. In cases of fraudulent concealment, the limitation period commences at the time of discovery or when, with reasonable diligence, one would have

been led to discovery of fraudulent concealment; actual knowledge of fraudulent concealment is not required. *Urland v. Merrell–Dow Pharmaceuticals, Inc.,* 822 F.2d 1268 (3d Cir.1987). Plaintiffs have not argued fraudulent concealment here.

more, if this Court were to consider the statute of limitations question anew, it would conclude that Mr. Yurcic's cause of action arose at the time he knew of his injuries and their immediate cause, not at the time of the label change.[3]

## C. Breach of Warranty Claim

Plaintiffs' breach of express warranty claim is not subject to the two-year statute of limitations. *See* 13 Pa.C.S.A. § 2725 (specifying four year limitation). In this claim, Plaintiffs assert that the pharmaceutical Defendants "expressly warranted that their product was both efficacious and safe for its intended use." (Compl.¶ 104). Plaintiffs claim that Defendants breached this warranty because the drug they produced and marketed is not safe or effective for long-term use and it produces serious side effects, and that the drug was not adequately labeled or fit for the ordinary purposes. *Id.* at ¶¶ 107–108. Purdue Defendants seek judgment on this claim, arguing that Plaintiffs' complaint fails to state a claim because they have not alleged that Mr. Yurcic read or was aware of any express warranties.

 To prevail on a claim for breach of warranty under the Pennsylvania Uniform Commercial Code against Purdue as the seller of OxyContin, Plaintiffs must establish that a breach of warranty occurred and that the breach was the proximate cause of the specific damages sustained. *Price v. Chevrolet Motor Div. of General Motors Corp.*, 765 A.2d 800, 809 (Pa.Super.2000) (citing *Altronics of Bethlehem, Inc. v. Repco. Inc.*, 957 F.2d 1102 (3d Cir.1992)). To show breach, there must have been an express warranty, which Purdue does not dispute, and the warranty

must have become part of the "basis of the bargain." *Boyd v. Johnson & Johnson*, 2002 WL 372959, at *2–3 (Pa.Com.Pl. Jan.22, 2002). In general, all of the statements of the seller become part of the basis of the bargain "unless good reason is shown to the contrary." 13 Pa.C.S.A. § 2313, cmt. 8. It is important, however, that the buyer at least be aware of the seller's representation prior to the transaction's consummation. *Id.*, cmt. 3. A successful claim for breach of express warranty must plead such statements, reliance on behalf of the consumer, which presumes an awareness of the warranty, and, finally, damages. *Oppenheimer v. York Int'l*, 2002 WL 31409949, at *3 (Pa.Com.Pl. Oct.25, 2002). Defendants argue that the reliance element has not been met.

In *Boyd*, the plaintiff brought an action against the manufacturer of the drug Propulsid, alleging that it failed to include warnings regarding certain side effects of the drug. The court, noting that there were warningless warranties, nonetheless found that the plaintiff's breach of express warranty claim was legally insufficient because "there is no indication anywhere in the Complaint that the Plaintiff ever saw or heard any warningless warranties before he purchased Propulsid or that the documents and representations the Plaintiff saw or heard are of the kind that can create a warranty." *Boyd*, 2002 WL 372959 at *3; *see also Sowers v. Johnson & Johnson Med., Inc.*, 867 F.Supp. 306, 313 (E.D.Pa.1994) ("[A]n express warranty must be 'directed at consumers in order to induce purchases of the product.' "); *Kenepp v. American Edwards Labs.*, 859 F.Supp. 809, 817 (E.D.Pa.1994) (citing *Silverman v. Samuel Mallinger Co.*, 375 Pa.

---

**3.** Plaintiffs also argue that the statute of limitations is a factual issue that should be determined by the jury. However, where a prior order by the court has ruled otherwise and it is clear from the pleadings that there are no issues of fact as to when the claims arose, this argument has no merit.

422, 100 A.2d 715 (1953), to hold that a drug company's material data safety sheets could not give rise to a warranty because "the representations made therein were not directed at consumers in order to induce purchases of the product"); *Hahn v. Richter*, 543 Pa. 558, 673 A.2d 888, 891 (1996) ("[W]here the adequacy of warnings associated with prescription drugs is at issue, the failure of the manufacturer to exercise reasonable care to warn of dangers, *i.e.*, the manufacturer's negligence, is the only recognized basis of liability.").

■■■■ Plaintiffs have not pled that Mr. Yurcic read or was aware of any warranties, but they argue it can be inferred from the pleadings. The complaint alleges that the warranties were made publicly and Plaintiffs assert that it can be inferred and it is in fact true that Plaintiffs relied on those warranties. Plaintiff has not alleged that he was aware of the warranties he claims were made, namely in press releases, verbal assurances, Physician's Desk Reference publication, pamphlets distributed to physicians, or advertisements. (Compl.¶ 105). Furthermore, Defendants have submitted evidence that they never marketed OxyContin to the general public via the internet or otherwise, or to Plaintiff's doctors specifically. Plaintiffs' failure to plead this essential element of the claim is therefore fatal.[4]

Plaintiffs argue in the alternative that they should be granted leave to amend their complaint. Plaintiffs have provided no factual predicate for such an amendment, such as an affidavit by Mr. Yurcic specifying which warranties he was aware of and relied upon, and have not made a

motion to the Court or submitted a proposed amendment. These defects constrain the Court to deny Plaintiffs' informal request. Fed.R.Civ.P. 15; *see Lake v. Arnold*, 232 F.3d 360, 374 (3d Cir.2000) (denial warranted where failure to provide a draft amended complaint); *F.D.I.C. v. Bathgate*, 27 F.3d. 850, 874–77 (3d Cir. 1994) (amendment would be futile where identity of allegedly fraudulent statement not specified, and key allegations were lacking). However, in the interest of justice, the Court will dismiss this claim against the Purdue Defendants without prejudice so that Plaintiffs may file a motion to amend together with a proposed amendment. At that time, the Court can more fully consider whether Plaintiffs' claim for breach of express warranty may proceed.

## VII. *Abbott Defendants' Motion*

The Abbott Defendants move for summary judgment on all claims against them, reiterating the arguments raised by Purdue and raising two arguments particular to them. First, they argue that Plaintiffs are unable to prove causation, an element of all of their claims, because Abbott's promotion activities never extended to Plaintiff or his doctors. Second, they argue that they are not a seller of OxyContin under the Pennsylvania UCC, so cannot be held liable for any alleged breach of express warranty.

### A. Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to inter-

---

4. At argument, Plaintiffs' counsel argued for the first time that the "learned intermediary doctrine" precludes judgment on this claim. However, the case cited by Plaintiffs in support of this argument, *Rosci v. AcroMed, Inc.*, 447 Pa.Super. 403, 669 A.2d 959 (1995), provides exactly the opposite of what Plaintiffs

propose. The doctrine does not apply to express warranty claims; rather, it is a defense available to drug manufacturers to claims for breach of implied warranty when the company fulfilled its obligation to warn prescribing physician of risks associated with the medication. *Id.*

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56. A factual dispute is material if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 249. The nonmoving party receives the benefit of all reasonable inferences. *Sempier v. Johnson and Higgins,* 45 F.3d 724, 727 (3d Cir.1995).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint. Instead, [it] must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Id.* at 322, 106 S.Ct. 2548.

**B. Discussion**

For the same reasons discussed above at section II.B, the negligence and fraud claims against the Abbott Defendants must be dismissed. Accordingly, the only claim warranting additional discussion in Plaintiffs' claim for breach of express warranty. In addition to endorsing the arguments advanced by Purdue, the Abbott Defendants advance two additional theories which could support dismissal of Plaintiffs' breach of express warranty claim against them. First, they argue that Plaintiffs cannot demonstrate the causal link necessary to succeed on their claim and therefore cannot demonstrate standing. Abbott did not make, sell, design, or have anything to do with OxyContin other than a limited role of co-promotion of the drug to specific classes of doctors. They did not promote the drug directly to consumers and their records reveal that they never contacted Plaintiff's treating physicians or promoted the drug to them in any way. Therefore, they argue, Plaintiffs cannot establish that Abbott's actions caused their injuries. Second, they argue that under the Pennsylvania statute, breach of warranty may not be asserted against a non-seller. Since Abbott did not sell or supply the drug, it cannot be liable to Plaintiffs under this theory.

■ The Pennsylvania Uniform Commercial Code provides:

(a) General rule.—Express warranties *by the seller* are created as follows:

(1) Any affirmation of fact or promise *made by the seller* to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(b) Formal words or specific intent unnecessary.—It is not necessary to the creation of an express warranty that the

seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the opinion of the seller or commendation of the goods does not create a warranty.

13 Pa.C.S.A. § 2313 (emphasis added). As indicated by the emphases, liability attaches to the seller of the product. Where it is undisputed that Abbott's role was limited to a co-promotion agreement with Purdue,[5] the issue here is whether a promoter can be considered a seller under Pennsylvania law.

Pennsylvania law defines "seller" as "A person who sells or contracts to sell goods." 13 Pa C.S.A. § 2103(a). While Plaintiff argues that Pennsylvania law incorporates a promoter into its definition of "seller," the law they cite, Restatement (Second) of Torts § 402A, pertains to strict liability claims for product liability and because Plaintiffs have not brought such a claim, it has no application here. *See Gavula v. ARA Services, Inc.*, 756 A.2d 17 (Pa.Super.2000). Accordingly, under the definition of seller applicable to this claim, the Abbott Defendants cannot be construed as sellers of OxyContin, and the breach of warranty claim against them must therefore fail.

██ Plaintiffs also make a motion pursuant to Fed.R.Civ.P. 56(f), arguing that more time for discovery is necessary to respond to the arguments. Regardless, Plaintiffs have not made the requisite showing for a Rule 56(f) motion. The threshold requirement for a Rule 56(f) motion is the filing of a supporting affidavit specifying why the additional time and discovery is necessary. *Pastore v. Bell Tel. Co.*, 24 F.3d 508, 511 (3d Cir.1994). Plaintiffs seeking an extension must specify "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling v. City of Phila.*, 855 F.2d 136, 140 (3d Cir.1988). The Court of Appeals for the Third Circuit held that where the non-moving party had not filed a Rule 56(f) affidavit and had simply stated that "information is known to us, that simply must be pursued via discovery and deposition before the plaintiffs are in a position to respond," the pleadings were insufficient and the motion was denied. *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 230 (3d Cir.1987). Here, Plaintiff's counsel has submitted an affidavit, stating summarily that "without the opportunity for proper discovery, including the review of relevant documents, the depositions of key witnesses and the answering of interrogatories and requests for admissions, plaintiffs are prejudiced." (Doc. No. 16, ex. B ¶ 6). It does not provide any specifics as to what discovery it seeks and how it would preclude granting summary judgment. Furthermore, a stay of discovery was granted in this case only after all parties, including Plaintiffs, agreed that a stay was warranted. (*See* Doc. No. 13). Because Plaintiffs have failed to show what specific discovery could aid them and how, and in light of the Court's legal determination that Abbott cannot be held liable for breach of warran-

---

**5.** While Plaintiffs state that they "cannot confirm or deny that Abbott did not sell OxyContin," Abbott has provided Plaintiffs with their contract with Purdue to promote the drug and have submitted to the Court a sworn affidavit by a corporate officer, Nicole Mowad–Nassar, who states, *inter alia*, that Abbott has not ever sold or supplied OxyContin. At summary judgment, Plaintiffs cannot simply deny Defendants' evidence; rather, they must set forth "specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

ty, it is clear that additional discovery would not save these claims. Accordingly, Plaintiff's request will be denied.

## VIII. *Conclusion*

The law of this case dictates that Mr. Yurcic knew of his injuries and their cause by December 27, 1999. Therefore, his claims against all the Pharmaceutical Defendants that are subject to a two year statute of limitations are time-barred. Furthermore, Plaintiffs' claims for breach of express warranty must be dismissed against all Pharmaceutical Defendants because Mr. Yurcic has not alleged that he was aware of or relied upon any express warranties, and he is unable to bring a claim against Abbott Defendants as non-sellers. Finally, Mrs. Yurcic's claim for loss of consortium must fail, as the vitality of such a claim is dependant on the existence of the underlying tort action. *Petrocelli v. Daniel Woodhead Co.*, 993 F.2d 27, 30 (3d Cir.1993); *Darr Const. Co. v. W.C.A.B.*, 552 Pa. 400, 715 A.2d 1075, 1080 (1998).

## IX. *ORDER*

AND NOW, therefore, this 29th day of March, 2004, for the reasons discussed above, IT IS ORDERED THAT:

1. Purdue Defendants' motion for judgment on the pleadings (Doc. No. 7) is GRANTED. Counts I, III, and VI against Defendants Purdue Pharma, L.P., Purdue Pharma, Inc., and Purdue Frederick Company are DISMISSED. Count II against the Purdue Defendants is DISMISSED WITHOUT PREJUDICE to file a motion to amend within thirty (30) days of the date of this Order.

2. Abbott Defendants' motion for summary judgment (Doc. No. 10) is GRANTED.

3. The Clerk of Court shall defer entry of Judgement against Defendants pending further order of this Court.

4. The Clerk of Court shall close the file.