**Rettew v. Liberty Homes Inc.**

C.P. of Lancaster County, no. CI-09-08606.

*Edward Shensky,* for plaintiff.

*Robert A. Lerman,* for defendant Fisher Welding Services.

*J. Michael Flanagan,* for defendant Liberty Homes.

CULLEN, *J.,* August 20, 2010—Pending before the court is the motion for judgment on the pleadings filed by defendant, Liberty Homes Inc. Having reviewed the pleadings and the arguments of the parties, the court concludes that defendant is entitled to the relief sought. Accordingly, the motion will be granted.

PROCEDURAL AND FACTUAL BACKGROUND

This case arises out of a fatal accident suffered by David Ellis Rettew on May 6, 2008, during the course of his employment with Eagle River Homes L.L.C. (Compl. ¶¶3, 24-25.) Plaintiff, Zane Rettew, is Mr. Rettew's brother and the administrator of his estate. (*Id.* ¶1.) According to the complaint, the accident occurred when decedent, in the course of his employment with Eagle River Homes, was using the pendant controllers to move a roof unit along the superstructure from the ceiling pit area onto a manufactured home. He had completed this task and was in the process of moving the hoists back to the ceiling pit area when the hoists ran off the open end of the girders dropping the below-the-hook lifting device attached to the hoists onto decedent causing his death. (*Id.* ¶¶24-25.)

From September 21, 1995, through August 4, 2006, defendant, Liberty Homes Inc. was the owner of the facility and was "in the business of designing, manufacturing, maintaining, servicing, assembling and/or installing manufactured homes." (*Id.* ¶¶7-8). During that time

period, Daniel J. Fisher t/d/b/a Fisher's Welding Services, at Liberty's request, "altered the design of the superstructure, and/or the system and/or the pendant controllers at the property, so as to make them unsafe for users such as decedent" and "failed to purchase/install 'stops' on [the] superstructure and/or the system" to prevent the sort of accident that occurred. (*Id.* ¶¶16-20.)

On or about August 4, 2006, Liberty sold its home manufacturing and assembly facility with all of its components, including the superstructure and the pendant controllers, to Eagle River Homes L.L.C. Decedent was operating this system as an employee of Eagle River Homes at the time of his death. (*Id.* ¶¶13, 24-25.) The sale transaction was completed pursuant to an asset purchase agreement between Liberty and Eagle River Homes L.L.C. (Def.'s am. ans. with new matter and cross-claim, ex. A, "asset purchase agreement.")

Plaintiff, as administrator of his late brother's estate, initiated this action by filing a complaint on June 1, 2009. Liberty filed an answer on July 24, 2009, and an amended answer and cross-claim on September 11, 2009. Fisher filed an answer and cross-claim on August 21, 2009.

After the pleadings closed, Liberty filed its motion for judgment on the pleadings and a supporting brief on October 6, 2009. On October 29, 2009, plaintiff filed a response to defendant's motion and a supporting brief. Liberty filed its reply brief on November 4, 2009. Fisher filed a response to the motion and a supporting brief on November 17, 2009. Liberty likewise filed a reply brief. After the matter was assigned, the court heard oral argument at the request of the parties.

## DISCUSSION

A party may file a motion for judgment on the pleadings at the close of the pleadings. Pa.R.C.P. 1034. A motion for judgment on the pleadings is similar to a demurrer in that it may be entered where there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. *Erie Insurance Exchange v. E.L. ex rel. Lowry,* 941 A.2d 1270, 1272 (Pa. Super. 2008). In determining whether there is a dispute as to the facts, the court must confine its consideration to the pleadings and relevant documents. *Id.*

The party seeking judgment on the pleadings must admit the truth of all the allegations of his adversary and the untruth of any of his own allegations that have been denied by the opposing party. *Tate v. Pennsylvania Board of Probation and Parole,* 40 Pa. Commw. 4, 6, 396 A.2d 482, 483 (1979). (citation omitted) Where there is a question of fact in dispute, judgment on the pleadings cannot be entered. *Miami National Bank v. Willens,* 410 Pa. 505, 507-08, 190 A.2d 438, 439 (1963).

Liberty argues it is entitled to judgment on the pleadings because there are no allegations of a duty on its part owed to decedent in plaintiff's complaint which would support a negligence claim. (Def.'s mot. ¶¶13-14, 17; Def's br. supp. def's mot. (def.'s br.) 3.)

"It is axiomatic that the elements of a negligence-based cause of action are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss. When considering the question of duty, it is necessary to determine whether a defendant is under any obligation for the benefit of the particular plaintiff . . . and, unless there is a duty upon the defendant

in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence . . . .

"Duty, in any given situation, is predicated upon the *relationship existing between the parties at the relevant time*. Where the parties are strangers to each other, such a [duty] may be inferred from the general duty imposed on all persons not to place others at risk of harm through their actions. The scope of this duty is limited, however, to those risks which are reasonably foreseeable by the actor in the circumstances of the case." *Gresik v. PA Partners L.P.,* 989 A.2d 344, 351-52 (Pa. Super. 2009) (emphasis in original) (quoting *Roche v. Ugly Duckling Car Sales,* 879 A.2d 785, 789 (Pa. Super. 2007). (citations omitted)

The determination of whether a duty exists in a particular case involves the "weighing of several discrete factors" which include: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Althaus v. Cohen,* 567 Pa. 547, 553, 756 A.2d 1166, 1169 (2000). (citation omitted) "A duty of care arises 'only where a reasonable person would recognize the existence of an unreasonable risk of harm to others through the intervention of such negligence.'" *Kenner v. Kappa Alpha Psi Fraternity Inc.,* 808 A.2d 178, 182 (Pa. Super. 2002). (internal quotations omitted) (citations omitted)

Relying on *Gavula v. ARA Services Inc.,* 756 A.2d 17 (Pa. Super. 2000), defendant asserts that "there is no common-law duty recognized in the Commonwealth of Pennsylvania running from an asset purchase of a pro-

duction facility to the employees of a separate corporation which continues to operate the facility after the asset purchase." (Def.'s br. 5.) The facts of *Gavula* are as follows.

"On September 17, 1992, plaintiff, Marie Gavula, was injured in a motor vehicle accident during the course of her employment with Ogden Ground Services Inc. (Ground Services). At the time she was a passenger in a step van owned by her employer and operated by a co-employee. The door of the van was kept open while the van was in operation. Ms. Gavula, a passenger, was standing when the driver had to stop the van. Ms. Gavula was then thrown from the van, and injured. Plaintiff alleges that the modifications made to the van, including rearranging the interior furnishings, had rendered it defective and that said defects were the cause of her injuries.

"From 1969 to 1986, plaintiff's employer, Ground Services, was a wholly owned subsidiary of defendant ARA. In 1986 a change in corporate structure made Ground Services a subsidiary of The ARA Group, itself a subsidiary of ARA. In September, 1989, Ground Services was transferred to another business unit of ARA, Air/Leisure Services/International (Air/Leisure). In 1990, ARA sold all the outstanding and issued stock of Ground Services to Ogden Allied Services Group (Ogden). The stock sale transferred all the business and assets of [Ground Services], including the van involved in plaintiffs accident." *Gavula,* 756 A.2d at 18.

The Superior Court affirmed the order of the trial court granting summary judgment for the defendants, ARA Services Inc. and Air/Leisure Services/International

Group Inc. *Id.* at 23. The Superior Court held,[1] inter alia, that the defendants, as a matter of law, were not negligent with respect to their modification of the interior of the step van they sold to Ogden. *Id.* at 18-19. In reaching this conclusion, the *Gavula* court stated:

"We hold as a matter of law that [the plaintiffs] have not alleged sufficient facts to make out a claim for negligence. Specifically, they have not established that [the moving defendants], the former owners of the subject step van, owed Maria Gavula, a duty of care at the time of her accident. [The plaintiffs] have simply alleged that [the moving defendants] were "negligent" in various ways related to their modification of the step van. These allegations of negligence are incomplete, however, without any correlative factual averments as to a duty owed by [the moving defendants] . . . . We cannot infer such duty from allegations about the nature of the work performed by [the moving defendants] in modifying the van . . . . "

---

1. The *Gavula* court also held that the moving defendants were not "sellers" within the meaning of section 402A of the Restatement (Second) of Torts for purposes of strict liability. *Gavula,* 756 A.2d at 20-21. Liberty states that "[t]he closest approximation of a duty appears in pargraph 22 of the complaint where plaintiff alleges, "At all times material hereto [Liberty and Fisher] were sellers of a product consisting of the superstructure, and/or the system, and/or the pendant controllers aforementioned.'" (Def.'s mot. ¶14.) Liberty asserts this allegation supports only a cause of action for strict liability, not negligence, and moves for judgment on the pleadings in that respect as well based on *Gavula.* (*Id.* ¶15.) In his response, plaintiff states that he is not alleging that Liberty is liable under strict liability. (Pl.'s mem. l. supp. response to def.'s mot. (Pl.'s mem.) 5-6.) Rather, plaintiff alleges negligence as its sole cause of action against Liberty. (*Id.* 5.) Accordingly, it is unnecessary to discuss any potential liability under a strict liability theory.

"Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time . . . . Here, [the plaintiffs] averred no relationship with [the moving defendants] that would give rise to a duty." *Id.* at 22. (citations omitted)

Based on *Gavula,* Liberty urges the court to grant its motion because "nowhere in plaintiff's complaint does plaintiff allege that Liberty Homes Inc. owed a duty to plaintiff's decedent." (Def.'s br. 2.)

In response, plaintiff states that the "duty owed by [Liberty] in this instance, is not the duty of a prior owner of the business but the duty of a designer of the defective equipment to a foreseeable user of the equipment." (Pl.'s mem. 3.) Plaintiff contends that Liberty designed and installed the allegedly defective equipment and had a duty not to place others, such as decedent, at risk of harm through it's actions. (*Id.* 4; compl. ¶¶16, 19, 21, 23, 27.) In support of this position, plaintiff cites *Sports Management Group Inc. v. Allensville Planning Mill Inc.,* 16 D.&C.3d 760 (Mifflin Cty. Feb. 15, 1980). (Pl.'s resp. to def's mot ¶13; pl's mem. 4.)

In *Sports Management,* the trial court denied preliminary objections in the nature of a demurrer filed by a construction contractor which supplied a roof design for a gymnasium which collapsed. *Sports Management,* 16 D.&C.3d at 762. A subsequent purchaser of the building was permitted to pursue its claims against the builder and designer of the roof. *Id.* The defendants in *Sports Management* were in the business of building structures and designing roofs. *Id.* However, in the present case, Liberty "was in the business of designing, manufacturing,

maintaining, servicing, assembling and/or installing manufactured homes . . . ." (Compl. ¶8.) Because Liberty is *not* in the business of manufacturing or designing bridge girders, monorail systems, track spurs, openers or switches, underhung cranes or hoists, or below-the-hook lifting devices (the equipment alleged to have been defective causing the decedent's accident and death (compl. ¶9)), *Sports Management* is inapplicable.

The court must conclude that *Gavula* controls the outcome of this case. Liberty is "in the business of designing, manufacturing, maintaining, servicing, assembling and/or installing manufactured homes . . ." (Compl. ¶8) and not in the business of constructing, designing, or altering the equipment (or superstructure) used to manufacture those homes. It is claimed that Liberty did alter the equipment, allegedly making it more dangerous, (*id.* ¶¶16, 19), prior to selling its home manufacturing and assembly facility with the equipment to Eagle River Homes L.L.C. (*id.* 13). The accident is said to have been caused by the dangerous equipment while decedent was employed by Eagle River Homes L.L.C. (*Id.* ¶¶24-25.)

Similarly, in *Gavula,* ARA Services Inc, was not in the business of designing modifications to step vans, but did so in an allegedly dangerous manner with respect to the van at issue. ARA Services Inc, later sold all of its assets to Ogden Allied Services Group, including this modified step van. The plaintiff was injured when she fell from the dangerously modified step van while she was employed by Ogden Allied Services Group.

The *Gavula* court found no duty on the part of ARA Services Inc. to Ms. Gavula and affirmed the order grant-

ing summary judgment on the plaintiff's negligence cause of action. The same result is required here in light of the strikingly analogous facts. As a matter of law, no duty was owed by Liberty to decedent, and plaintiff therefore cannot maintain its cause of action for negligence against Liberty on the facts alleged. Accordingly, the motion for judgment on the pleadings with respect to plaintiff's complaint will be granted.

With respect to Fisher's cross-claim against Liberty, the court concludes that Liberty is also entitled to judgment in its favor. For the reasons discussed above, Liberty cannot be found, as a matter of law, to have acted negligently toward plaintiff's decedent. Fisher extensively argues that Liberty may be liable due to Liberty's purported fraudulent conduct in selling its business and assets with latent defects to Eagle River Homes L.L.C. (Fisher's br. opp. def.'s mot. (Fisher's br.) 8-9.) Fisher appears to be raising claims on behalf of Eagle River Homes L.L.C. which is not a party to this action. Fisher argues that Liberty did not disclose "latent defects associated with the superstructure" to Eagle River Homes L.L.C. (*Id.* 8.)[2] A review of the complaint and cross-claim

---

2. Fisher states that Pennsylvania courts "have consistently held that one may recover for latent defects where the defects were not reasonably discoverable through an inspection of the property and where the seller had actual knowledge of the latent defects and had either made affirmative representations as to the absence of the defect or had made efforts to hid the defect physically by placement of objects to conceal it." (Fisher's br. 7.) In support of its argument, Fisher cites three cases: *Ward v. Serfas,* 387 Pa. Super. 425, 564 A.2d 251 (1989), *Mancini v. Morrow,* 312 Pa. Super. 192, 458 A.2d 580 (1983) and *Woodward v. Dietrich,* 378 Pa. Super. 111, 548 A.2d 301 (1988). (*Id.* 7-8.) Each of these three cases involves a claim of fraud. See *Ward,* 387 Pa. Super. at 428, 564 A.2d at 252; *Mancini,* 312 Pa. Super. at 196,

reflects that neither plaintiff nor Fisher has alleged a cause of action based upon fraud. Accordingly, this argument lacks merit.

Fisher also opposes Liberty's motion on the basis that the asset purchase agreement between Liberty and Eagle River Homes L.L.C. contains ambiguous language which does not absolve Liberty of liability from plaintiff's negligence claim.[3] (*Id.* 9.) For the reasons discussed above, the court concludes that Liberty is entitled to judgment on the pleadings because, as a matter of law, no duty existed on the part of Liberty to decedent. Because plaintiff's negligence claim against Liberty cannot survive, the court does not find it necessary to address whether Liberty may or may not be absolved from liability by virtue of the terms in the asset purchase agreement between it and Eagle River Homes L.L.C.

Fisher's cross-claim is dependant on plaintiff's cause of action against Liberty as Fisher has not alleged an independent cause of action against Liberty. Rather, Fisher's cross-claim is for contribution, indemnification, or both, based on plaintiff's negligence claim and, therefore, Fisher cannot survive Liberty's motion for judgment on the pleadings. Because Liberty's motion will be granted with respect to plaintiff's complaint, the motion also will be granted with respect to Fisher's cross-claim.

Accordingly, the court enters the following:

---

458 A.2d at 581-82; *Woodward,* 378 Pa. Super. at 115, 548 A.2d at 303. Such is not the case in this action as no fraud has been alleged. As a consequence, the cited cases offer no relevant support for Fisher's misplaced arguments.

3. Fisher appears to concede that no other claims except negligence have been asserted by it and plaintiff against Liberty. (Fisher's resp. opp. def.'s mot. ¶¶4, 6, 13, 15, 17.)

400

And now, August 20, 2010, upon consideration of the motion for judgment on the pleadings filed by defendant, Liberty Homes Inc., and the responses of plaintiff, Zane Rettew, administrator of the estate of David Ellis Rettew, and defendant Daniel J. Fisher t/d/b/a Fisher's Welding Services, it is ordered that the motion for judgment on the pleadings is granted.